PEOPLE v LANZO CONSTRUCTION COMPANY

Docket No. 260738. Submitted September 6, 2006, at Detroit. Decided
October 17, 2006, at 9:20 a.m.

Lanzo Construction Company was charged in the Oakland Circuit
Court with involuntary manslaughter and with violating Michigan
Occupational Safety and Health Act (MIOSHA) safety regulations
after Robert Whiteye, a pipe layer whom the defendant hired, died
during a sewer construction accident. Following a bench trial, the
court, Colleen A. O'Brien, J., found the defendant not guilty of
involuntary manslaughter but guilty of violating MIOSHA. The
defendant appealed.

The Court of Appeals *held*:

1. The trial court employed the proper definition of "willful" in
analyzing the MIOSHA charge. MIOSHA requires an employer to
provide a place of employment that is free from recognized hazards
that are likely to cause death, MCL 408.1011(a). MCL 408.1035(5)
provides a criminal penalty for willful MIOSHA violations. The
definition of "willful" in MCL 408.1006(8) requires only that a
defendant intentionally disregard a MIOSHA requirement or be
knowingly and purposely indifferent to such a requirement. It does
not require moral turpitude, evil purpose, or criminal intent. To the
extent that the trial court misread federal authority concerning
willfulness, any error was harmless because the federal definition to
which the trial court referred did not reduce the prosecution's burden
of proof and the defendant was not prejudiced. Moreover, the defini-
tion of "willful" in MIOSHA does not mirror the gross negligence
standard for involuntary manslaughter. Thus, the fact that the trial
court found the defendant not guilty of manslaughter did not
preclude conviction on the MIOSHA charge. There was sufficient
evidence that the defendant violated MIOSHA by continuing to work
on the sewer although it knew that the trench in which Whiteye
worked was unstable and likely to collapse without adequate safe-
guards.

2. The criminal liability of the defendant's employees can be
imputed to the defendant under MIOSHA. Because MIOSHA does
not expressly provide for an employer's vicarious liability for an
employee's act, an employee's or agent's criminal intent cannot be

imputed to the defendant unless the employee or agent is a manager, officer, or board member. The defendant's foreman at the construction site and the defendant's superintendent were high management officials whose criminal acts could be imputed to the defendant because they had supervisory responsibility over the subject matter of the offense. They were responsible for safety at the construction site and acted within the scope of their agency and on the defendant's behalf. There was sufficient evidence that these employees willfully violated MIOSHA by allowing Whiteye to work in the trench in conditions that were unacceptable under MIOSHA. Because there is no distinction between the defendant's acts and its employees' acts, the defendant's argument that Whiteye's death resulted from intervening acts of misconduct by its employees fails.

3. The trial court did not err by amending its verdict at sentencing without allowing the parties to dispute the trial court's sua sponte ruling that its admission of evidence regarding a prior fatality involving the defendant was harmless error. The trial court characterized its mistake as clerical and corrected it under MCR 6.435(A). A trial court is presumed in a bench trial to know the applicable law. It is reasonable to presume that the trial court can distinguish its own written findings of fact and conclusions of law to determine whether material was included inadvertently because of a clerical mistake. The defendant has not overcome the presumption that the trial court correctly classified its mistake. The defendant's claim that the error was substantive and thus required correction under MCR 6.435(B), with an attendant hearing, is purely speculative.

Affirmed.

1. CRIMINAL LAW — INTENT — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT.

The Michigan Occupational Safety and Health Act provides a criminal penalty for willful violations of the act; willfulness in this context requires only that a defendant either intentionally disregard a requirement of the act or be knowingly and purposely indifferent to a requirement of the act; willfulness does not mirror the gross negligence standard of wantonness or recklessness and does not require an evil motive (MCL 408.1006[8], 408.1035[5]).

2. CRIMINAL LAW — INTENT — MASTER AND SERVANT — VICARIOUS LIABILITY OF EMPLOYEES — HIGH MANAGEMENT OFFICIALS — MICHIGAN OCCUPATIONAL SAFETY AND HEALTH ACT.

The criminal intent of an employee or agent can be imputed to the employer for vicarious criminal liability under the Michigan Oc-

cupational Safety and Health Act only if the employee or agent is a manager, officer, or board member of the employer; a useful criterion for determining whether an employee is a high management official whose criminal liability may be imputed to the employer is the requirement of supervisory responsibility over the subject matter of the criminal offense by a person acting in the scope of his or her employment on the employer's behalf.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *John D. Walter*, Assistant Attorney General, for the people.

*Robyn B. Frankel* for the defendant.

Before: MURRAY, P.J., and SMOLENSKI and SERVITTO, JJ.

SERVITTO, J. Defendant appeals as of right its conviction of one count of violating Michigan Occupational Safety and Health Act (MIOSHA) safety regulations, MCL 408.1035(5). We conclude that the trial court appropriately interpreted and applied the definition of "willfullness" as it relates to MIOSHA violations and properly determined that defendant could be vicariously liable for the criminal acts of its high-level corporate employees as they relate to MIOSHA violations, and that there was sufficient evidence to support the trial court's rulings on these issues. We also conclude that the trial court reasonably determined that its mistake (in stating that certain documentation had been provided) was both clerical in nature and harmless, and thus affirm.

This case arises out of the asphyxiation death of Robert Whiteye. Defendant hired Whiteye as a pipe layer on a sanitary sewer project. While Whiteye brought his own crew to the job, defendant employed other persons at the site to supervise the work. Despite MIOSHA regulations requiring the use of protective shoring devices on vertical trench walls that are more

than 5 feet deep, on May 24, 1999, Whiteye was working in a 15- to 20-foot-deep trench with vertical walls and no protective shoring devices installed. Whiteye was working in a trench box, an expandable steel-plated box placed in the trench to protect workers if the walls of the trench collapse, but had to leave the trench box when he encountered a natural-gas line. While he was working to connect pipe to a manhole near the gas line, the trench walls around the manhole collapsed and partially buried Whiteye. He died as a result.

Defendant was charged with involuntary manslaughter and willful violation of MIOSHA. The trial court acquitted defendant of involuntary manslaughter, but convicted it of willfully violating MIOSHA. The trial court sentenced defendant to two years' probation and a fine of $10,000.

On appeal, a trial court's findings of fact may not be set aside unless they are clearly erroneous. *Ridley v Detroit*, 231 Mich App 381, 388; 590 NW2d 69 (1998), remanded on other grounds 463 Mich 932 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 388-389. On appellate review, questions of law are examined under a de novo standard. *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).

Defendant raises three arguments on appeal. First, defendant asserts the trial court made insufficient findings of fact to support its conclusions of law when it erroneously interpreted and applied the definition of "willfulness" as it relates to MIOSHA violations. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence in a bench trial. *People v Wilkens*,

267 Mich App 728, 738; 705 NW2d 728 (2005). The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

This issue also raises a question of statutory interpretation, which is reviewed de novo on appeal. *People v Yamat*, 475 Mich 49, 52; 714 NW2d 335 (2006). "The fundamental rule of statutory construction is to discern and give effect to the intent of the Legislature." *People v Venticinque*, 459 Mich 90, 99; 586 NW2d 732 (1998). If the statute's language is clear and unambiguous, this Court must enforce the language as written. *Id.* at 99-100. When a statute sets forth its own definitions of certain terms, those terms must be applied as defined. *Pobursky v Gee*, 249 Mich App 44, 46; 640 NW2d 597 (2001). Undefined words are to be given meaning as understood in common language, considering the text and the subject matter in which they are used. *Phillips v Jordan*, 241 Mich App 17, 23 n 1; 614 NW2d 183 (2000).

Defendant was charged with willfully violating the MIOSHA requirement that an employer "[f]urnish to each employee, employment and a place of employment which is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee." MCL 408.1011(a). MCL 408.1035(5) provides a criminal penalty for willful violations of MIOSHA:

> An employer who willfully violates this act, an order issued pursuant to this act, or a rule or standard promulgated under this act which causes the death of an employee is guilty of a felony and shall be fined not more than $10,000.00 or imprisoned for not more than 1 year, or both. . . .

"Willful" is defined in MCL 408.1006(8) as follows:

"Wilful", for the purpose of criminal prosecutions, means the intent to do an act knowingly and purposely by an individual who, having a free will and choice, either intentionally disregards a requirement of this act, or a rule or standard promulgated pursuant to this act, or is knowingly and purposely indifferent to a requirement of this act, or a rule or standard promulgated pursuant to this act. An omission or failure to act is wilful if it is done knowingly and purposely. Wilful does not require a showing of moral turpitude, evil purpose, or criminal intent provided the individual is shown to have acted or to have failed to act knowingly and purposely.

Defendant argues that the trial court deviated from this definition when it referred to a definition of "willfulness" set forth in *United States v Dye Constr Co*, 510 F2d 78 (CA 10, 1975), and *Dearing v United States*, 167 F2d 310 (CA 10, 1948). In *Dye*, the defendant's employee was a pipe layer who was killed in an accident similar to the events of the instant case. *Dye, supra* at 80. The defendant was charged with willfully violating the federal Occupational Safety and Health Act, 29 USC 651 *et seq.*, for failing to take proper steps to prevent the collapse of the trench walls. *Id.* at 79-80. The trial court included the following definition of "willful" in its jury instructions:

"The failure to comply with a safety standard under the Occupational Safety and Health Act is willful if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally." [*Id.* at 81.]

On appeal, the defendant argued that this instruction was erroneous because it should have also stated that "an evil motive is an essential element." *Id.* The

court acknowledged that its prior decision in *Dearing* defined the word "willfulness" as requiring more " 'than the mere doing of the act proscribed,' " because the term " 'generally means an act done with a bad purpose, without justifiable excuse.' " *Dye, supra* at 82, quoting *Dearing, supra* at 312. However, the court held that *Dearing* did not involve a distinction between offenses involving moral turpitude and those that did not. *Dye, supra* at 82.

In the instant case, the trial court quoted the *Dearing* court's definition of "willfulness" that was quoted and discussed in *Dye*. Defendant argues that the trial court erred in relying on the *Dearing* court's definition because *Dearing* did not distinguish between offenses that involve moral turpitude and those that do not. However, defendant does not identify any material distinction between the statutory definition and the discussion in *Dearing*. Although the trial court did not recognize the context in which the court in *Dye* cited *Dearing,* this is immaterial unless it reduced the burden of proof for the prosecution. Defendant does not argue that the evidence might establish its guilt under the *Dearing* definition but would not do so under the definition in MCL 408.1006(8). Accordingly, to the extent the trial court misread *Dearing* or *Dye*, defendant was not prejudiced and any error was harmless. MCL 769.26; *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001).

Relying on a footnote in *Dye,* defendant also suggests that in cases that do not involve acts of moral turpitude (such as this one), the appropriate standard would require the prosecution to establish that the defendant's acts were not ordinary negligence. By extension, then, defendant contends that the issue here becomes whether its conduct was grossly negligent. According to

defendant, because willfulness, as set forth in MCL 408.1006, effectively incorporates the equivalent of gross negligence for involuntary manslaughter, the trial court's finding that defendant was not guilty of manslaughter precluded the court from convicting it of willfully violating MIOSHA.

Gross negligence, in the context of involuntary manslaughter, involves (1) knowledge of a situation requiring the use of ordinary care and diligence to avoid injury to others, (2) an ability to avoid harm by using ordinary care and diligence, and (3) the "failure to use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." *People v Albers,* 258 Mich App 578, 582; 672 NW2d 336 (2003). Put another way, a defendant who does not seek to cause harm, but is simply reckless or wantonly indifferent to the results, is grossly negligent. *People v McCoy,* 223 Mich App 500, 502; 566 NW2d 667 (1997).

Willfulness, as it relates to MIOSHA violations, however, requires only that a defendant either intentionally disregard a requirement of MIOSHA or be knowingly and purposely indifferent to a requirement of MIOSHA. The definition of "wilful" provided in MCL 408.1006 does not mirror a gross negligence standard because a defendant who knowingly and purposely disregards (or is indifferent to) a MIOSHA requirement acts willfully, even if the defendant's conduct is not wanton or reckless. Because the concept of willfulness in MCL 408.1006(8) is distinct from the element of gross negligence for purposes of manslaughter, the fact that defendant was found not guilty of manslaughter did not preclude a finding of guilty on the MIOSHA violation charge.

Here, defendant was charged with a violation of MCL 408.1011(a), which requires an employer to "[f]urnish to each employee, employment and a place of employment which is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee." There was sufficient evidence that defendant continued to work on the sanitary sewer although it knew the trench was unstable and, without adequate safeguards, was likely to collapse.

According to the record, there was sporadic rain on May 24, 1999. Although excavation work is more hazardous in the rain because wet soil is unstable and more prone to collapse, Bret Bertollini, the foreman supervising the work, did not stop work on account of the rain. Whiteye and another employee suggested to Bertollini that he should stop work because of the rain, but Bertollini ignored them.

Cleveland McCree, a MIOSHA inspector, and Richard Lew, an expert on underground construction safety, testified that the trench box used by Whiteye should have been expanded to a width of eight feet and that it should have been positioned near the bottom of the trench. Whiteye's trench box, however, was expanded to a width of four feet, and it was positioned near the top of the trench. McCree and Lew also testified that the combined hazards of wet soil and vertical walls heightened the risk of collapse. In addition, MIOSHA regulations require the use of protective shoring devices on vertical trench walls that are more than five feet deep. Notwithstanding the regulations and the hazards, Whiteye's crew was working in a 15-foot trench with no steel plates to reinforce the walls of the trench, although the plates were available. Accordingly, the trial court not only employed the proper definition of "will-

fulness" as it relates to MIOSHA violations, there was sufficient evidence to support its conclusions of law on this issue.

Defendant next claims that the trial court failed to consider or rule on defendant's assertion that Whiteye's death was caused by intervening acts of misconduct. Defendant contends that it cannot be subjected to criminal liability for the acts of its employees and that the trial court's failure to address or rule on this issue relieved the prosecution of its obligation to prove that defendant was independently guilty of the MIOSHA violation. Defendant challenges the sufficiency of the trial court's factual findings as a result.

Ultimately, this Court must review a trial court's findings " 'in the context of the specific legal and factual issues raised by the parties and the evidence.' " *People v Rushlow,* 179 Mich App 172, 177; 445 NW2d 222 (1989), aff'd 437 Mich 149 (1991) (citation omitted). If the trial court was aware of the issues in the case and correctly applied the law to the facts, its findings are sufficient. *People v Smith,* 211 Mich App 233, 235; 535 NW2d 248 (1995). Whether an employer may be liable for the acts of an employee is question of law we review de novo. *Rogers v J B Hunt Transport, Inc,* 466 Mich 645, 650; 649 NW2d 23 (2002).

Whether a corporation may be held criminally liable under MIOSHA for the conduct of its employees is an issue of first impression in Michigan. We have, however, previously addressed whether a corporate employer can be held vicariously liable under other statutes for the criminal acts of its employees committed during the course of their employment. For example, in *People v Hock Shop, Inc,* 261 Mich App 521; 681 NW2d 669 (2004), the defendant corporation was charged with violations of MCL 750.224f and MCL 750.223(4) when

its employee knowingly sold a firearm and ammunition to a felon. The district court dismissed the charges, and the circuit court affirmed the dismissal. This Court also affirmed, noting that while courts have been fairly liberal in allowing the imposition of vicarious liability in the context of tort actions, such liability has been substantially limited in the criminal context. The Court stated:

> In 1 Restatement Agency, 2d, § 217D, 474, it is acknowledged that "[a] principal may be subject to penalties enforced under the rules of the criminal law, for acts done by a servant or other agent." However, the comments on that section make clear that in the absence of an express statutory provision imposing such liability, it will generally not be found to exist where the statute requires a specific criminal intent. See also LaFave & Scott, Criminal Law, § 32, pp 224-225. [*Id.* at 526-527.]

The Court concluded that the defendant could not be held criminally liable for its employee's act because the statute did not provide for vicarious liability and further noted that "where the agent is a manager, officer, or board member of the corporation, the agent's criminal intent can be imputed to the corporation itself," but the employee who sold the firearm was not a high management official. *Id.* at 527.

MIOSHA does not contain any express provision for an employer's vicarious criminal liability for its employee's act. MIOSHA defines "employer" as "an individual or organization, including the state or a political subdivision, which employs 1 or more persons." MCL 408.1005(2). There is nothing in this definition that can be construed as either an implicit or ambiguous provision for vicarious liability. Thus, while the corporate entity can be a proper defendant in a prosecution under MCL 408.1035(5), criminal intent cannot be imputed to

the defendant unless the "the agent is a manager, officer, or board member of the corporation." *Hock Shop, Inc, supra* at 527.

As previously discussed, there was sufficient evidence that Bertollini willfully violated MIOSHA by allowing Whiteye and his crew to work in a trench in which there were numerous risk factors for a collapse. However, Bertollini was not an officer or board member of defendant, so his liability cannot be imputed to defendant unless he was a "high management official." *Id.* Little guidance can be found in Michigan law concerning the degree of supervisory authority that is necessary to deem an agent a "high management official" whose criminal acts can be imputed to the corporation. The most useful guidance[1] is found in *State v Adjustment Dep't Credit Bureau, Inc*, 94 Idaho 156, 160; 483 P2d 687 (1971), in which the Idaho Supreme Court stated:

> 2 Corporation Law and Practice, Hornstein, 1959, § 566, p. 47, in our opinion correctly states the rule as to criminal liability as follows:
>
> "A corporation may be convicted if (a) legislative purpose plainly appears to impose absolute liability on the corporation for the offense; or (b) the offense consists of an omission to perform an act which the corporation is required by law to perform; or (c) the commission of the offense was authorized, requested, commanded or performed (i) by the board of directors, or (ii) by an agent having responsibility for formation of corporate policy or (iii) by a 'high managerial agent' *having supervisory responsibility over the subject matter of the offense and acting within the scope of his employment in behalf of the corporation.*" [Emphasis added.]

---

[1] When an issue has not yet been addressed in Michigan, we may look to cases decided in other jurisdictions for guidance. *People v Cathey*, 261 Mich App 506, 511; 681 NW2d 661 (2004).

The requirement of "supervisory responsibility over the subject matter of the offense" provides a useful criterion for determining whether an employee or agent is a "high management official" for purposes of imposing criminal liability on the corporation. This criterion is also harmonious with *Hock Shop* and provides a more relevant delineation than merely considering an employee's rank, title, or general scope of responsibility. As such, this Court believes this standard is appropriately applied when determining when a corporation can be held criminally liable for an agent's illegal acts in the context of MIOSHA.

Applying this standard to the instant case, there was undisputed evidence that Bertollini held supervisory responsibility over the subject matter of the offense and acted within the scope of his employment on behalf of defendant. Bertollini was a "qualified person" under MIOSHA standards, meaning that he had the ability to decide whether a worksite was adequately safe or whether extra precautions were needed. Mark Klimbal, the superintendent who supervised Bertollini, acknowledged that Bertollini was in charge of the crew and had supervisory authority over the crew. He stated that Bertollini was responsible for safety and that the foreman bears the "ultimate responsibility" for safety on the job. Further, Bertollini described his job responsibilities as "[o]versee[ing] the job, mak[ing] sure it was done." He acknowledged that he was responsible for making field decisions based on worksite conditions. These facts are sufficient to establish that Bertollini's supervisory authority encompassed safety responsibilities, including the duty to keep the worksite free of hazards that were likely to cause death or serious harm to an employee. MCL 480.1011(a).

Klimbal also held supervisory authority over safety at the worksite. Klimbal acknowledged that he was a qualified employee under MIOSHA and that his duties as superintendent included responsibility for safety. Klimbal acknowledged that the trench conditions were not acceptable under MIOSHA, but he continued the job because he believed it would be all right to work there for a short time. Additionally, when Klimbal hired Whiteye and his crew, he made the tacit decision that it was unnecessary to provide safety instruction, advice, or training to someone of Whiteye's experience. Klimbal and Bertollini were both acting within the scope of their agency and acting on defendant's behalf when they committed the acts and omissions that led to Whiteye's death; there are no facts or circumstances that negate this self-evident fact. Consequently, their criminal liability can be imputed to defendant.

Here, although the trial court did not use the terms "respondeat superior" or "vicarious liability," it thoroughly discussed the factual bases for its decision finding defendant guilty, and it is possible to discern the trial court's rationale for convicting defendant. The trial court extensively discussed Bertollini's and Klimbal's failure to use available safety equipment as the cause of Whiteye's death, thus suggesting that the trial court's guilty verdict was predicated on the assumption that Bertollini's and Klimbal's liability can be imputed to defendant. The court also commented that "[d]efendant had a heightened awareness of the MIOSHA standards as evidenced by and through its corporate safety manuals" and found that "[d]efendant consciously and callously neglected to train both the hourly and supervisory personnel in its worker safety rules, which failure led to the death of Robert Whiteye." This latter finding suggests that the verdict was also predicated on defendant's allegedly deficient safety policies

and practices, which presumably were established by its ownership and management. Sufficient evidence was presented, then, to convict defendant of the MIOSHA violation, and, because there is no distinction between the acts committed by defendant and the acts committed by its employees, Klimbal and Bertollini, defendant's argument concerning an intervening cause by its employees fails.

Defendant's final argument on appeal is that the trial court erred in amending its verdict at sentencing without allowing the parties to dispute its sua sponte ruling that the admission of MRE 404(b) evidence was a harmless error. We disagree.

MCR 6.435 provides, in relevant part:

> (A) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it.

> (B) Substantive Mistakes. After giving the parties an opportunity to be heard, and provided it has not yet entered judgment in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous.

Under MCR 6.435(A), the trial court was permitted to correct clerical mistakes in its decision at any time. The trial court characterized its mistake in stating that documentation had been provided establishing that defendant had experienced one cave-in fatality before Whiteye's death as clerical, and there is no basis in the record for disputing this characterization. In a bench trial, the trial court is presumed to know the applicable law. *People v Farmer*, 30 Mich App 707, 711; 186 NW2d 779 (1971). Although this presumption is usually articulated in the context of distinguishing admissible

from inadmissible evidence, it is reasonable to presume that the trial court is also able to distinguish its own written findings of fact and conclusions of law to determine whether material was inadvertently included because of a clerical mistake. In the absence of any contrary indication, it should be presumed that the trial court correctly classified its mistake.

Defendant suggests that the error must be substantive because it involved evidence that the trial court considered in reaching a verdict, but this assertion is not self-evident. It can be presumed that the trial court was in the best position to know whether the stricken finding affected its verdict and that it would not allow the verdict to stand if it did. Defendant has not overcome this presumption. The court expressly stated that the erroneous inclusion of the stricken material was harmless and was not a ground to set aside or otherwise modify its verdict. Consequently, defendant's claim that the error was substantive is purely speculative.

Affirmed.