# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL ANTHONY MCCROY,

      Defendant-Appellant.

UNPUBLISHED
March 2, 2017

No. 329384
Wayne Circuit Court
LC No. 15-004258-01-FC

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant, Michael McCroy, appeals as of right his bench trial convictions of assault with intent to do great bodily harm (AWIGBH), MCL 750.84, intentional discharge of a firearm from a motor vehicle, MCL 750.234a, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to two years' probation each for the AWIGBH and intentional discharge of a firearm from a motor vehicle convictions, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a shooting that occurred in May 2015 near a party store in Detroit. At around 4:30 p.m., defendant drove his father Michael Johnson, his friend "Juno," and Christian Cross to a party store. Juno and Cross were arguing in the backseat. When the two men got out of the car in the party store parking lot, the argument turned physical and Cross pushed Juno to the ground. Defendant got out of the car and stopped the two men from fighting. Three of Cross's cousins happened to be at a barber shop across the street, and they watched Cross push Juno to the ground. One of the cousins, Marcus Turner, testified that he and the other two men walked over to the party store parking lot to see what was happening. According to defendant, the cousins were threatening everyone and followed defendant and the others into the party store. Johnson testified that as he walked back out of the party store, he informed defendant that he thought he saw that one of the men had a gun. Defendant, Johnson, and Juno got back in the car, and defendant started to drive away.

Defendant claimed that he heard one of the men in the parking lot say, "get the heat," which defendant understood as a term for a firearm. As defendant pulled out, he watched Turner run behind his car and he did not know if Turner had a gun or not, but he thought he might. Defendant turned left out of the parking lot, and according to his and his father's testimony, there

-1-

were five other men walking across the street heading toward the party store parking lot.[1] Defendant claimed that he heard one of them load a weapon by pulling the slide back. Defendant, Juno, and Johnson all testified that they heard loud banging on the car, which they claimed sounded like it could have been bullets hitting the car. Defendant watched as Turner threw an object at the car, which Juno and Turner testified was a clear bottle.[2] The bottle hit the back of the car. According to defendant, he feared for his life and the lives of his passengers based on the five men approaching from the right, the banging on the car, and the fact that he heard someone say "get the heat." Thus, seconds after Turner's bottle hit the car, defendant pulled out his gun, stuck it out the driver-side window, and fired two shots. Defendant claimed he aimed the gun at the ground and was only attempting to prevent the men from attacking. However, the second bullet struck Turner in the leg. Surveillance videos at the party store captured the entire incident and were admitted at trial. Additionally, defendant admitted pictures of his vehicle, which had some damage to the roof and right side of the car. However, there were no bullet holes.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence presented at trial was insufficient to support his convictions.[3] We disagree.

When reviewing a challenge to the sufficiency of the evidence following a bench trial, this Court reviews the record de novo. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). This Court must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found each element of the charged crimes proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This Court resolves conflicts of evidence in favor of the prosecution, and will not interfere with the trier of fact's determinations regarding the weight of evidence and the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

---

[1] Johnson testified that a lot of the danger was coming from the five guys to the right of the vehicle coming from a house area, who were running toward them and all had something in their hands. He clarified that he was not talking about the people they had encountered in the parking lot, as "[w]e moved too fast for that." Defendant described the people on the passenger side of the vehicle as a "group" of people who "attacked us" and came "close" to the vehicle, although he did not know exactly how close. Defendant described Turner's approach and the group to the right coming at him at the same time.

[2] Turner testified that he threw a glass juice bottle, which struck the top rear of the car.

[3] Although defendant's first stated issue in his brief to this Court claims there was insufficient evidence to convict him for intentional discharge of a firearm from a motor vehicle and for felony-firearm, defendant does not provide support for these arguments. Because defendant failed to properly argue these claims, he has abandoned them on appeal. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014), citing *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012).

The gravamen of defendant's claim is two-fold. First, defendant argues that there was insufficient evidence to find that he had the intent to do great bodily harm as required for an AWIGBH conviction. Second, defendant argues there was insufficient evidence to disprove beyond a reasonable doubt his self-defense claim. Defendant's arguments fail.

To convict a defendant of AWIGBH, the prosecutor must prove two elements: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). The element of intent to do great bodily harm is further defined as "an intent to do serious injury of an aggravated nature." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Stevens*, 306 Mich App at 629, citing *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). Additionally, "[i]intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Stevens*, 306 Mich App at 629, citing *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).

Multiple witnesses, including defendant, testified that defendant pulled out his handgun, stuck it out the window, and fired shots in the general direction of Turner. The surveillance video also supports this testimony. In fact, one of the bullets struck Turner in the leg, further showing that defendant had aimed the weapon in Turner's direction before pulling the trigger. Regardless of this evidence, defendant claims that he was shooting at the ground and not at Turner, proving he lacked the intent to do great bodily harm. Given that the evidence is viewed in favor of the prosecution, only minimal circumstantial evidence is required to show the requisite intent, and defendant purposefully pointed a dangerous weapon in the direction of another person and pulled the trigger twice, there was sufficient evidence to find that defendant's actions satisfy the intent requirement for AWIGBH.

Defendant also argues that the prosecution failed to prove beyond a reasonable doubt that defendant did not act in self-defense. After a defendant produces some evidence that the elements of self-defense exists, "the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *Stevens*, 306 Mich App at 630, citing *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010) (quotation marks omitted). Under MCL 780.972(1):

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Defendant satisfied the initial burden of providing some evidence of self-defense. Defendant claimed that he was justified in protecting himself because his vehicle was being attacked by Turner and another group of men, and the circumstances surrounding the incident

raised an honest and reasonable belief that his life was in danger. As support, defendant claimed he heard someone say, "get the heat," Johnson informed defendant that someone had a gun, and Juno, Johnson, and defendant all heard banging noises on defendant's car—noises that sounded like gunfire. However, viewing the evidence in favor of the prosecution, there was sufficient evidence for the prosecution to satisfy the burden of excluding self-defense beyond a reasonable doubt.

To begin, defendant argues that the trial court relied too heavily on the surveillance video in its ruling and failed to consider the testimony of the defense witnesses. This argument is without merit. The trial court noted that much of defendant's self-defense claim rested on his assertion that there was a group of five men approaching the right side of defendant's vehicle. This Court should not disturb the credibility determinations of the trial court, *Unger*, 278 Mich App at 222, and here, the trial court discredited defendant's testimony for two reasons. First, the surveillance video did not show a group of five men approaching from the right side of the vehicle as described by defendant and his father. After reviewing the surveillance video, which includes an expansive view of the parking lot and surrounding area where the incident took place, we agree with the trial court's conclusion that there was not a group of men anywhere near defendant's vehicle at the time of the shooting or any time thereafter.[4] Second, the trial court determined that it would not make sense that defendant, fearful of men approaching the right side of the vehicle, would aim the gun over his left shoulder and fire two shots towards Turner, who was on the back left side of the vehicle. For that reason, the trial court discredited that aspect of defendant's testimony. Moreover, the trial court expressly discredited Johnson's testimony regarding the claim that there was a man with a gun in the parking lot. For these reasons, it was clear that the trial court considered the defense witnesses' testimony, but that it discredited much of their testimony because it contradicted clear surveillance video and was simply not believable.

The record also contains no evidence that Cross's cousins or any other person actually pulled a gun out or fired a gun at defendant's vehicle. Defendant did not testify to seeing a gun. Instead, he testified that Turner threw an object that struck defendant's car, and defendant then fired two shots out his window. The surveillance video likewise shows that Turner was shot seconds after throwing the bottle and as defendant's car was driving away from the parking lot. Based on this evidence, there was no threat of imminent death or great bodily harm, and defendant did not have justification to use deadly force. Thus, there was sufficient evidence to prove defendant did not have an honest and reasonable belief that the use of deadly force was necessary. MCL 780.972(1)(a).

Finally, defendant argues that the prosecution did not disprove defendant's self-defense claim at trial, and the trial court misapplied the self-defense standard. These arguments are meritless. First, the prosecutor did disprove defense counsel's self-defense claim at trial. At one point during the prosecutor's closing argument, the trial court asked whether defendant had a legal justification for shooting at Turner. The prosecutor then explained at length that defendant did not have justification because defendant's story did not make sense based on the surveillance

---

[4] Defendant admitted at trial that the group he described was not depicted in the video.

video. In rebuttal, the prosecutor again argued that it had proven beyond a reasonable doubt that defendant did not act in self-defense. Despite defendant's claims to the contrary, the prosecution clearly refuted the self-defense claim, and as stated previously, there was sufficient evidence to disprove defendant's self-defense claim beyond a reasonable doubt.

Second, the trial court did not misapply the self-defense standard. The trial court agreed with defense counsel that the burden rested on the prosecution to refute a claim of self-defense beyond a reasonable doubt. In fact, the prosecutor acknowledged that it was the prosecution's burden to disprove self-defense beyond a reasonable doubt. Moreover, the trial court never held in its ruling that defendant was required to, but failed to, prove self-defense beyond a reasonable doubt, but instead, held that defendant was not justified in shooting at Turner for throwing a bottle at the car and concluded that the prosecution met its burden of establishing the elements of the underlying charges beyond a reasonable doubt. Therefore, the record shows that the trial court properly applied the self-defense standard.

### III. DUE PROCESS

Defendant also argues that he was denied due process when the trial court relied on defendant's statement, which had been read into the record by Investigator Craig McDonald pursuant to MCL 763.8 and MCL 763.9.[5] We disagree.

To preserve a due process argument for appellate review, a defendant must raise an objection on that ground in the trial court. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). Defense counsel objected to the prosecution's attempt to have McDonald read defendant's statement into the record. However, defense counsel did not object on due process grounds. Instead, defense counsel requested the trial court "give extra favorable light to the defense when the statement comes in."[6] Therefore, this issue has not been properly preserved.

Generally, this Court reviews constitutional due process claims de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). However, unpreserved claims are reviewed for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). A plain error is one that is "clear or obvious," and the error must affect the defendant's "substantial rights." *Id.* at 763. In other words, the defendant must have been prejudiced by the plain error. *Id.* Further, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of [the] defendant's innocence." *Id.* at

---

[5] MCL 763.8 and MCL 763.9 address the requirements surrounding a law enforcement agency's obligation to record interrogations of individuals using audiovisual recording equipment and the consequences for failing to do so. In this instance, although the Michigan State Police recorded defendant's statement, the recording was not properly preserved and able to be presented at trial.

[6] Defense counsel based his objection on defendant's entitlement to the jury instruction mandated in MCL 763.9 when a law enforcement agency fails in its duty to record interrogations of individuals using audiovisual recording equipment.

763-764 (quotation marks and alterations omitted). This Court reviews issues of statutory interpretation de novo. *People v Juntikka (On Remand)*, 310 Mich App 306, 309; 871 NW2d 555 (2015).

First and foremost, Michigan courts have repeatedly recognized that the due process clauses of both the United States and Michigan constitutions do not require audiovisual recording of custodial interrogations. *People v Geno*, 261 Mich App 624, 627; 683 NW2d 687 (2004), citing *California v Trombetta*, 467 US 479; 104 S Ct 2528, 2533; 81 L Ed 2d 413 (1984); *People v Fike*, 228 Mich App 178, 184; 577 NW2d 903 (1998). Therefore, to the extent defendant claims that he has a constitutional right to a remedy, such as the suppression of his statement, defendant's claim fails.

Defendant also argues that the trial court should have indicated on the record that the statement was not properly recorded and then explained how this error affected the court's evidentiary findings. Pursuant to MCL 763.8, law enforcement officials must record all interrogations involving the commission of major felonies. If law enforcement officials fail to do so, a defendant's remedy is provided in MCL 763.9:

> Any failure to record a statement as required under section 8 of this chapter or to preserve a recorded statement does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible. However, unless the individual objected to having the interrogation recorded and that objection was properly documented under section 8(3), the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement.

Defendant claims that because the court would have been obligated to give an instruction permitting the jury to consider the absence of a recording when evaluating the evidence, the court was not only required to do so in a bench trial setting, it also had to explain its reasoning on the record. Therefore, defendant claims that the court erred when it failed to consider that the statement was not properly recorded. Defendant's argument is misguided.

There is no dispute that McDonald failed to preserve the recording as required under MCL 763.8. McDonald had 30 days to request the recording, but he did not do so and the recording was unavailable at trial. However, MCL 763.9 allows a testifying officer to discuss the contents of a defendant's statement so long as the officer was "present during the taking of the statement," and the "court determined that the testimony is otherwise admissible." Defendant does not dispute that McDonald was present at the interview. Additionally, the trial court ruled that McDonald's testimony was otherwise admissible and he could read defendant's statement into the record. Thus, defendant was entitled to the remedy under MCL 763.9, and this Court only imposes remedies that are clearly delineated under the statute. See *People v Anstey*, 476 Mich 436, 448-449; 719 NW2d 579 (2006) ("[S]uppression of the evidence is not an appropriate remedy for a statutory violation where there is no indication in the statute that the Legislature intended such a remedy and no constitutional rights were violated."). Defendant's

only remedy under the statute was a jury instruction, and in this case there was no jury. In a bench trial, "the trial court is presumed to know the applicable law" and is not required to instruct itself on the applicable law. *Lanzo Const Co*, 272 Mich App at 484. Therefore, the trial court had no further obligations under the statute.

## IV. PROSECUTORIAL MISCONDUCT

Defendant also argues that a statement made by the prosecutor during his closing argument constituted prosecutorial misconduct, depriving defendant of a fair and impartial trial. We disagree.

To preserve the issue of prosecutorial misconduct, a defendant must contemporaneously object to the prosecutor's statements. See *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Defendant did not object to the alleged improper statement at trial, and the issue is not properly preserved. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting defendant's substantial rights. *Id*. at 453-454. Once the plain error rule is satisfied, a conviction is reversed only if the defendant is actually innocent or if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutors are typically "accorded great latitude regarding their arguments and conduct." *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015), quoting *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). They are generally free to argue the evidence and all reasonable inferences as may be related to their theory of the case, and they are not required to confine their statement to the blandest possible terms. *Dobek*, 274 Mich App at 66. "[A] prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Dobek*, 274 Mich App at 64.

Defendant argues that the prosecutor prejudiced his self-defense claim by referencing the "grassy knoll," a JFK assassination conspiracy theory. During closing argument, the prosecutor stated:

> The [c]ourt can see also from that same [c]amera that [defendant] rolled his window down shortly after getting in the car. All the other windows are up. There is [sic] no guys advancing on the car from the right front, from the alley, from the houses, from nowhere on the right front.

> \* \* \*

> According to [defendant] he's seeing all of this. Looking right, looking left, seeing these alleged guys, kind of reminds me, I'm not going to go into it. Reminds me of the grassy knoll. He sees these people advancing toward the car. He sees [Turner] from the back. [Defendant] does not have justification. His self-defense claim is not honest. It's not reasonable because it's not fact based.

Defendant claims that the prosecutor improperly influenced the trial court with a reference to the JFK assassination, specifically that defendant's testimony was akin to the grassy knoll theory—a theory that JFK was assassinated by another shooter standing on a grassy knoll just outside the view of the camera footage. According to defendant, the prosecutor analogized the grassy knoll to defendant's testimony because defendant had claimed there were five men ready to attack his vehicle, but that they were just outside the view of the party store surveillance footage. Defendant claims this analogy amounted to prosecutorial misconduct that prejudiced his entire self-defense claim. Defendant's argument is unavailing.

The prosecutor's statement must be read in context with defendant's claim of self-defense, *Callon*, 256 Mich App at 330, and the prosecutor's statement refuted defendant's claim that there was a group of men just outside of the camera's view threatening defendant and his two passengers. The prosecutor is afforded great latitude when making statements during closing argument, and he is not confined to using the blandest possible terms. *Dobek*, 274 Mich App at 66. For that reason, a quick reference to a historical event in history does not amount to plain error, and even if it did, "[a] judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial." *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (quotation marks and citation omitted). The trial court concluded that, based on the surveillance video and the testimony at the bench trial, there was not a group of men approaching defendant's car.

Defendant also argues, as part of his claim of prosecutorial misconduct, that he was prejudiced by the prosecution's statement because defendant's self-defense claim relied heavily on the fact that the group of men attacked his car. This argument fails. The trial court found it "convincing" that even if there had been a group of men off to the right of defendant's car, there was no justification for shooting in the opposite direction towards Turner, who had only tossed a bottle at defendant's car. Therefore, defendant's claim is unavailing, and the prosecutor's statement did not deprive defendant of a fair and impartial trial.

## V. JAIL CREDIT

Finally, defendant argues that he was denied proper jail credit. We disagree.

To preserve an issue involving whether the defendant was properly awarded jail credit for time served, the issue must have been raised and decided by the trial court. *People v Connor*, 209 Mich App 419, 431; 531 NW2d 734 (1995). At the sentencing hearing, defendant did not object to his award of jail credit for time served, and the issue has not been properly preserved. Generally, "[w]hether a defendant is entitled to credit for time served in jail before sentencing is a question of law that we review de novo." *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011). However, as stated previously, this Court reviews unpreserved claims for outcome-determinative plain error. *Id*. at 46, citing *Carines*, 460 Mich at 763-764.

The trial court granted defendant jail credit based, in part, on the six days that defendant was incarcerated, beginning with his arrest on May 22, 2015, to his arraignment on May 27, 2015. Thereafter, defendant was out on bond until the conclusion of the trial. After trial, the court denied defense counsel's request to continue defendant's bond, and defendant was

remanded to jail. Defendant received jail credit for the time he was remanded to jail on August 18, 2015, up until his sentencing on September 2, 2015. Based on those two findings, the trial court set defendant's jail credit at 21 days.

Defendant argues that under MCL 769.11b he should receive 11 days of jail credit for his time on a tether from July 18, 2015, to July 28, 2015. Defendant's argument fails. According to MCL 769.11b:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

This Court held in *People v Reynolds*, 195 Mich App 182, 183; 489 NW2d 128 (1992), that when "participation in [a] tether program was not due to [the defendant's] being denied or unable to furnish bond for the offense of which he was convicted [pursuant to MCL 769.11b], he is not entitled to sentence credit under the sentence credit statute." Here, defendant was out on bond from May 2015 until his conviction on August 18, 2015, and therefore, according to the plain language of the statute, he is not entitled to jail credit for being in a tether program during that time out of jail. This Court in *Reynolds* also held that time spent on a tether is not equivalent to time spent in jail. *Reynolds*, 195 Mich App at 184. Thus, because defendant was out on bond while he was tethered, and because time on a tether is not equivalent to time spent in jail, defendant has not demonstrated a clear and obvious error on the record, and he is not entitled to 11 days of jail credit for his time spent on a tether.

Defendant also argues that he should be afforded six days of jail credit for time served in September, 2015. This argument is without merit. Defendant received jail credit from August 18, 2015, up until his sentencing date on September 2, 2015. Under MCL 769.11b, defendant is only entitled to jail credit for "time served in jail prior to sentencing." Thus, defendant could not have been denied six days of jail credit in September 2015, when he was sentenced on September 2, 2015. Moreover, defendant was, in fact, credited for the days in September that he spent in jail before his sentencing. Therefore, the trial court did not err when it granted defendant 21 days of jail credit.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola