*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JL.

AMY BUZZARD,

UNPUBLISHED
February 15, 2024

        Petitioner-Appellee,

v

No. 367990
Sanilac Probate Court

JL,

LC No. 23-034027-MI

        Respondent-Appellant.

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the probate court's order finding him to be a "person requiring treatment" and ordering involuntary mental health treatment consisting of hospitalization for up to 60 days and assisted outpatient treatment for up to 180 days. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In September 2023, respondent was taken to the emergency room (ER) at McLaren Port Huron hospital by Emergency Medical Services personnel. Petitioner was the nurse assigned to respondent in the ER. Petitioner testified that respondent was dirty, disheveled, and incapable of maintaining a coherent conversation or giving direct answers to basic questions about himself or his health. Respondent provided inconsistent explanations of why he was there; he stated that he had been assaulted, but showed no sign of having been recently injured. Respondent provided a variety of inconsistent statements regarding when the assault had occurred. Hospital records would later reveal that respondent had presented to the same ER a month earlier with blood in his urine, a fractured rib, and complaints that he had been struck on the head with a cobblestone. According to the records, respondent did not appear to have any mental disturbances at that time, but he did check out against medical advice for no known reason. Although petitioner denied that respondent made any threats, respondent was later examined by Daniel Goyes, M.D., who described respondent as "very aggressive, hostile, demanding, very grandiose." Dr. Goyes opined

-1-

that respondent had very poor insight, judgment, hygiene, and grooming, as well as very poor "reality testing." Respondent refused medications and treatment.

Dr. Goyes testified that he diagnosed respondent with a mood disorder because respondent appeared to be unable "to regulate his mood and the flight of ideas, grandiosity" and seemed to be experiencing something "along the lines of a manic episode which falls under a mood disorder." Dr. Goyes recognized the possibility that respondent might be suffering from the effects of a traumatic brain injury (TBI). Dr. Goyes opined that respondent was unable to attend to his basic physical needs based on respondent's "[v]ery poor hygiene, grooming, disheveled appearance." Dr. Goyes further opined that respondent did not understand his need for treatment because "[w]henever I try to talk to him about medications or treatment he usually responds with negative comments towards me and the medications, and states that he does not want to take anything." Dr. Goyes believed respondent needed mental health treatment consisting of a combination of inpatient and outpatient treatment.

Respondent also participated in the hearing, although he was largely unable to answer direct questions, and he engaged in lengthy statements that frequently had little to do with the matter at hand. Respondent stated that he had been a trial attorney for approximately 50 years with a record of having only ever lost one or two cases; he attempted to advise his attorney and the probate court how to conduct the proceedings and referred to the proceedings as "a Mickey Mouse court." Respondent's appointed attorney testified that respondent had initially been assigned another attorney, who met with respondent and attempted to talk with him; the attempt was unsuccessful because respondent "was extremely aggressive, extremely combative, refused to engage in conversation, refused to allow [the attorney] to say any words." Respondent acknowledged that he had "brain trouble" and was not thinking "up to [his] standard" and needed help. Respondent repeatedly stated that he had stumbled across a methamphetamine lab being operated near his ranch by a deputy, whereupon its operator hit him on the head with a cobblestone. Respondent did not answer his attorney's question about whether he had reported the lab or the assault to law enforcement. Respondent told the probate court that his problems were not psychological, and that "you're making a mistake to think that I have the normal kind of mental problems that's cause[d] by being hit in the head when I discovered this meth lab." The probate court refused respondent's request to conduct his own closing argument.

The probate court found Dr. Goyes's diagnosis of "mood disorder, not otherwise specified" was established by clear and convincing evidence based on witness testimony and the probate court's observations of respondent at the hearing. The probate court observed that Dr. Goyes was "still attempting to determine some of this is a T.B.I., if it's destabilized a mental health condition, if it's something else" but that respondent's refusal to cooperate was impeding the medical investigation. The probate court found respondent unable to attend to his basic physical needs and unable to avoid serious harm. The probate court also noted that respondent's inability "to follow through and to explain things" was inconsistent with 50 years of experience as a trial attorney. The probate court found that respondent's inability to attend to his hygiene could result in injuries like infections, that respondent did not understand his need for treatment, which resulted in an unwillingness to participate in treatment, and that, based on respondent's extensive testimony regarding the methamphetamine lab, respondent was likely to suffer further harm by investigating the matter himself instead of making a proper police report.

The probate court agreed with Dr. Goyes that "[c]ertainly hospitalization is necessary initially," partly "to get a better handle on what's happening for [respondent], and also to start a course of treatment to see if that's going to be effective to reduce the symptoms and permit a return to the community." The probate court expressed hope for the outcome, stating that the fact that respondent had no known mental health history "really kind of demonstrates to me that he's able to be successful in the community once we get to the bottom of whatever's happening right now." The probate court ordered hospitalization not to exceed 60 days, and it ordered that psychotropic medications could be administered without respondent's consent if necessary. This appeal followed.

## II. STANDARD OF REVIEW

On review from a civil commitment proceeding, this Court reviews for an abuse of discretion a probate court's dispositional rulings, and it reviews for clear error the probate court's underlying factual findings. *In re Moriconi*, 337 Mich App 515, 521-522; 977 NW2d 583 (2021). A probate court abuses its discretion when "it chooses an outcome outside the range of reasonable and principled outcomes," which will necessarily occur if the probate court "makes an error of law." *Id*. at 522 (quotation marks and citations omitted). A probate court's finding is clearly erroneous when "a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). This Court generally defers to a probate court's superior ability to evaluate the demeanor of a person who appeared before it. *People v Kammeraad*, 307 Mich App 98, 141; 858 NW2d 490 (2014). The probate court's findings regarding alternatives to hospitalization must be supported by a preponderance of the evidence, and the proponent of any particular treatment option bears the burden of proving the propriety of that treatment option. *In re Portus*, 325 Mich App 374, 393-394; 926 NW2d 33 (2018).

## III. ANALYSIS

Respondent argues that the probate court erred when it found that he was a "person requiring treatment" under MCL 330.1401(1). Respondent also argues that the probate court erred when it found that hospitalization was appropriate. We disagree with both arguments.

"Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness generally are referred to as 'civil commitment' proceedings." *In re Londowski*, 340 Mich App 495, 503; 986 NW2d 659 (2022) (quotation marks, ellipsis, and citation omitted). In relevant part, " '[i]nvoluntary mental health treatment' means court-ordered hospitalization, assisted outpatient treatment, or combined hospitalization and assisted outpatient treatment," which may be ordered "for an individual if that individual is found to be a 'person requiring treatment' " as defined in MCL 330.1401. *Id*. at 504-505 (quotation marks and citations omitted).

MCL 330.1401(1) provides:

> As used in this chapter, "person requiring treatment" means (a), (b), or (c):
>
> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or

-3-

unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

" 'A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence.' " *Londowski*, 340 Mich App at 505, quoting MCL 330.1465.

"The probate court does not have unfettered discretion to choose a form of treatment and placement for an individual found to be a person requiring treatment." *Portus*, 325 Mich App at 390. Under MCL 330.1453a, the probate court must "order a report assessing the current availability and appropriateness for the individual of alternatives to hospitalization . . . ." MCR 5.741(A) additionally provides that "[b]efore ordering a course of involuntary mental health treatment or of care and treatment at a center, the court must receive a written report or oral testimony describing the type and extent of treatment that will be provided to the individual and the appropriateness and adequacy of this treatment." MCL 330.1469a(1)(a) requires the probate court to review that report and determine whether, in relevant part, a treatment program other than hospitalization would be " 'adequate to meet the individual's treatment needs' " and " 'sufficient to prevent harm that the individual may inflict upon himself or herself or upon others in the near future.' " *Portus*, 325 Mich App at 390, quoting MCL 330.1469a(1). Although MCL 330.1469a(1) imposes other requirements, respondent challenges only the probate court's compliance with subsection (1)(a). If the probate court determines that the requirements in MCL 330.1469a(1)(a), and the other requirements not at issue in this appeal, are met, the probate court is required to order " 'alternative treatment or combined hospitalization and alternative treatment . . . .' " *Portus*, 325 Mich App at 391, quoting MCL 330.1469a(2).

In this case, respondent argues that none of the three statutory grounds for finding him to be a "person requiring treatment" were satisfied. We disagree.

We agree with respondent that there was no evidence that he was at risk of intentionally injuring himself or others. However, MCL 330.1401(1)(a) also encompasses unintentional injuries. There was substantial evidence that respondent was at risk of injuring himself unintentionally. Respondent's inability to organize his thoughts was readily apparent from his testimony, and he even recognized that his thinking and speech were impaired. Further, respondent reported that there was a methamphetamine lab near his property, that he had already been injured

once by the operators, and that he would not "put up with any meth house or what do they call it, methamphetamine house next to my ranch." Respondent was unable to provide a coherent answer when asked whether he had reported the alleged lab to law enforcement. Whether or not respondent's statements were true, respondent's own testimony indicated that it was likely that respondent would undertake his own personal mission to investigate or eliminate the alleged methamphetamine lab, and could easily be further injured as a result. Further, the probate court noted that respondent's neglect of his basic needs could easily result in serious physical injury and infection. This finding was supported by the evidence, especially considering respondent's age (77). Additionally, although respondent's statements that he lived with a "raccoon and a possum" may have simply indicated that he lived *near* wild animals typically found in a rural setting, if those statements were taken at face value they could indicate that respondent lived in close proximity to wild animals that could easily injure or transmit diseases to him. The probate court did not clearly err by finding respondent to be a "person requiring treatment" under MCL 330.1401(1)(a).

Under MCL 330.1401(1)(b), a person may be a "person requiring treatment" if, as a result of a mental illness, the person "is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs." We agree with respondent that there was no evidence that he was unclothed, or homeless. Further, although Dr. Goyes described respondent as "fairly thin," he was not described as malnourished or dangerously underweight. However, the Legislature's enumeration of "food, clothing, or shelter" in MCL 330.1401(1)(b) is preceded by the term "such as," which indicates that the "list is not exhaustive." See *In re MJG*, 320 Mich App 310, 327; 906 NW2d 815 (2017). Therefore, the fact that respondent was not malnourished, unclothed, or homeless is not necessarily dispositive. We agree with the probate court that, because failing to maintain hygiene can result in sickness and infection, the ability to stay clean and healthy should constitute a "basic physical need . . . that must be attended to in order for the individual to avoid serious harm in the near future." Furthermore, at the age of 77, respondent's health may be fragile, and the fact that he checked himself out of the hospital against medical advice despite a fractured rib and blood in his urine strongly suggests that respondent will not attend to his physical health and could easily suffer serious harm as a result. The probate court did not clearly err by finding respondent to be a "person requiring treatment" under MCL 330.1401(1)(b) based on the evidence that he was not maintaining his hygiene.

Regarding MCL 330.1401(1)(c), respondent concedes that there was evidence that he refused treatment. He argues, however, that there was no evidence that treatment was necessary to prevent harmful deterioration of his condition or that he presented a significant risk of harm to himself or others. We disagree.

" 'Treatment' means care, diagnostic, and therapeutic services, including administration of drugs, and any other service for treatment of an individual's serious mental illness, serious emotional disturbance, or substance use disorder." See *MJG*, 320 Mich App at 327. Respondent notes that the hospital records of his previous injury did not indicate any mental health concerns, and argues that "Dr. Goyes did not testify that the mood disorder was continuing or something that existed for any significant period of time or was expected to exist in the future." But Dr. Goyes did testify that he believed respondent required treatment in the form of inpatient and outpatient

treatment and "long-acting medications." The probate court also recognized that Dr. Goyes had testified regarding the possibility that respondent was suffering from a TBI; that possibility had not been ruled out.[1] Even respondent's own testimony indicated that he knew he had a problem and that he needed help, yet he still refused any such help. The probate court properly found that respondent's refusal to cooperate with doctors and medical staff made it "hard to get a more detailed investigation." Ultimately, whether respondent's condition was psychological or physical in origin, the record suggests that some kind of treatment was necessary to arrest, and hopefully reverse, respondent's apparent mental decline. The probate court did not clearly err by finding respondent to be a "person requiring treatment" under MCL 330.1401(1)(c).

Respondent also argues that the probate court violated MCL 330.1469a(1)(a) by failing to "fully consider alternatives to hospitalization" and that the evidence was insufficient to support the necessity of hospitalization. We disagree.

There is no question that a report on alternatives to hospitalization was prepared and was received by the probate court. Therefore, the probate court did not violate MCL 330.1453a or MCR 5.741(A). Although the probate court did not expressly comment on the report, no statute, court rule, or caselaw requires the court to do so on the record. In the absence of a statute or court rule that enumerates particular factual findings that must be recited on the record, trial courts are generally not required to comment on "every conceivable detail." *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020). Trial judges are presumed to know the applicable law, so unless there is any indication to the contrary, trial judges are presumed to have followed the law. See *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612-613; 773 NW2d 267 (2009); *People v Lanzo Constr Co*, 272 Mich App 470, 484-485; 726 NW2d 746 (2006). There is no reason to believe the probate court failed to consider the report. Furthermore, the probate court accepted testimony regarding the need for hospitalization from Dr. Goyes, even though neither MCL 330.1469a(1) nor MCR 5.741(A) mandates any such testimony. The probate court expressly commented on its consideration of Dr. Goyes's testimony. To the extent respondent argues that the probate court failed to *consider* alternatives to hospitalization, respondent is incorrect.

Respondent also contends that the report on alternatives to hospitalization failed to explain why assisted outpatient treatment would not mitigate his delusions, why hospitalization was necessary, and why assisted outpatient treatment was not a reasonable alternative to hospitalization. Respondent is incorrect: the report recommends hospitalization for up to 60 days followed by assisted outpatient treatment, explaining that respondent had no insight into his mental health, was grandiose and had a poor grasp on reality, was refusing medications and treatment, and was a threat to himself. A person who was a threat to himself, had a poor grasp on reality, and was refusing treatment could not be expected to participate in outpatient treatment voluntarily. Furthermore, such a person would require some kind of controlled stabilization and orientation

---

[1] We note that respondent raises no argument that he is not "[a]n individual who has mental illness" within the meaning of MCL 330.1401(1)(a) through (c). Pursuant to MCL 330.1400(g), "mental illness" for purposes of civil commitment proceedings is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

before outpatient treatment could be feasible. Respondent also argues that Dr. Goyes provided inconsistent testimony regarding whether his recommendation was the "less restrictive means." We disagree with that characterization. In context, it is clear that Dr. Goyes testified that while a period of inpatient hospitalization was not the least restrictive means of treatment *that existed*, it was the least restrictive that was appropriate *for this patient*; in other words, it is clear that Dr. Goyes knew that other treatment options existed but had concluded that they would not be appropriate for respondent.

The probate court concluded that respondent needed to be hospitalized so that his condition could be more fully investigated, an investigation that respondent was hampering to his own detriment. This finding was consistent with the evidence—including respondent's own testimony—that there was *something* wrong with his cognition and that he was suffering as a result. The evidence also established that respondent was unwilling to participate in any treatment despite recognizing that he needed help, that he was incapable of caring for himself, and that he was a threat to himself. The probate court's finding that respondent needed some initial period of hospitalization was the only reasonable one under the circumstances. The probate court expressed hope that respondent could be stabilized sufficiently to be returned to the community, so it also limited the duration of that hospitalization. In light of respondent's history of success in life, the evidence indicating that he had suffered an injury, and the lack of evidence that his injury was unrecoverable, the probate court's finding was also not clearly erroneous.

Finally, it is worth noting that if the probate court finds under MCL 330.1469a(1) that a treatment program other than involuntary hospitalization would be sufficient to meet the patient's treatment needs, it loses "the discretion to order hospitalization *as the sole form of treatment*." *Portus*, 325 Mich App at 391 (emphasis added). Here, the probate court did not order hospitalization as the sole form of treatment. The probate court therefore had "some degree of discretion to determine the nature of alternative treatment to order or how to structure a combination of hospitalization and alternative treatment." *Id*. Under the circumstances, the probate court did not abuse its discretion when it ordered an initial period of hospitalization for the purposes of determining what was causing respondent's mental challenges and stabilizing his condition sufficiently to permit outpatient treatment.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra