## PEOPLE v. SMITH.

1. APPEAL AND ERROR—WRIT OF ERROR WHERE NO JUDGMENT—EXCEPTIONS BEFORE SENTENCE.

Although a writ of error serves no purpose when there is no judgment to affirm, or reverse, and the case might well be dismissed, where the return contains just such a record as would be presented on exceptions before sentence, after conviction and denial of motion for new trial, the Supreme Court will so treat it, but without establishing any precedent thereby.

2. ASSAULT—ASSAULT WITH INTENT TO DO GREAT BODILY HARM LESS THAN MURDER—INTENT.

An "assault with intent to do great bodily harm less than murder" is a statutory offense and involves an assault defined as an attempt or offer with force and violence to do a corporal hurt to another, coupled with an intent to do great bodily harm less than murder; the harm or injury intended being of a serious and aggravated nature.

3. SAME—EVIDENCE—SUFFICIENCY—INFERENCES.

Testimony that defendant, driver of a truck, continued backing his truck in disobedience of his foreman's orders

until the latter was struck and severely injured, *held*, insufficient to justify defendant's conviction of assault with intent to do great bodily harm less than murder, where there was ample opportunity for the foreman to step out of danger, and there was no testimony from which an inference could be drawn that defendant anticipated, or should have anticipated, that such result would follow his disobedience of the foreman's orders.

Exceptions before judgment from Cass; Des Voignes (L. Burget), J.    Submitted January 17, 1922.    (Docket No. 174.)    Decided March 30, 1922.

Clark Smith was convicted of an assault with intent to do great bodily harm less than the crime of murder. Reversed, and defendant discharged.

*Elias P. Harmon,* for appellant.

*Merlin Wiley,* Attorney General, and *Carl D. Mosier,* Assistant Attorney General, for the people.

SHARPE, J.    A preliminary question is presented. The record shows that after conviction—

"Defendant was released on bond pending motion for new trial and hearing by the Supreme Court."

A motion for a new trial was made and denied.    A writ of error was then taken out and is returned with the bill of exceptions settled and signed by the trial court.    This writ serves no purpose when there is no judgment to affirm or reverse.    The case might well be dismissed under the authority of *People* v. *Macomber,* 182 Mich. 59, and cases cited.    But, aside from the return being in obedience to the command in the writ of error, it contains just such a record as would be presented on exceptions before sentence. Without establishing any precedent, we have concluded to so treat it.

On August 19, 1920, the defendant was in the em-

ploy of the county of Cass, driving a truck in which gravel was being hauled from a pit to a highway in the course of construction.   W. V. Kline was in charge of the work at the pit.   Jacob Myers was "foreman of the trucks and repair men."   He was stationed at Cassopolis.   He had hired defendant to drive the truck.   On defendant's arrival at the pit on the morning of the 19th, Kline requested him to go to Dowagiac in the afternoon and get some coal for use at the pit and gave him an order therefor.   Defendant claims that Myers told him to keep on hauling gravel.   Defendant had some talk with Kline about it, who insisted he must get the coal.   Defendant returned in the afternoon without the coal.   He proceeded to turn the truck half way around to back into the pit.   Kline saw him, advanced towards the entrance to the pit, and signaled him to stop.   Kline testified:

"I couldn't say how many times I gave him that signal.   I gave it to him enough so that I knew that he seen it.   I gave it to him more than once.   I imagine two or three or four times, perhaps; I couldn't say.   I was able to see Mr. Smith; he was looking right back at me—back end of his truck.   That was the direction in which the truck was proceeding.

"Q. When you gave him this first signal about how far were you from the back end of the truck?

"A. Well, I couldn't say how far; I was quite a few feet from it; I might say three rod maybe; maybe more.   I couldn't say as to that; I would not be sure just how far I was away.

"I did not take any steps forward towards the truck after I gave this first signal.   During any time that the truck was moving towards me, I did not advance toward it.

"Q. At what rate was the truck moving?

"A. Well, I couldn't say as to that.   He was backing in.   I couldn't say as to the rate; probably as fast as a man would walk along quietly.

"That part of the roadway where the truck started down into the pit was very nearly level, I should think.   And this roadway that leads from the high-

way into the pit is 10-11 feet wide, I should think. There is a fence on each side. I was standing about the center of the track that they back in. Mr. Shattuck was standing right close by me, on the north side of me, to my left. He didn't get struck. I couldn't say as to whether he was outside of the truck road or track. After I had given Mr. Smith these signals, he backed the truck right down and struck me and knocked me down and ran over my legs with the truck—the right-hand wheel.

"The reason why I did not get out of the way was because I expected him to obey orders; I didn't figure I was in the way. I didn't realize that the truck was close to me until after it hit me. I didn't remember or realize that the truck was within 6 or 8 or 10 feet of me until I was knocked down. When the truck struck me it knocked me back and immediately run on my legs, and I raised up kind of on my right hand and elbow and got my body out from behind the wheel. I can't say as it knocked me off my feet when it struck me, but it knocked me over—knocked me hard. It struck me first about on the middle of my right arm.

"Q. Could you approximate the speed of the truck when it struck you?

"A. No, I couldn't. I couldn't tell what the speed was, I couldn't say as to whether the truck was traveling at a faster rate of speed when it struck me than when I gave my signals to him before.  *  *  *  I don't think I was knocked any distance back more than just knocked over."

When Kline started towards the truck he asked William F. Shattuck to accompany him. Shattuck testified that he stood beside Kline when he gave the signals; that the approach to the pit was nearly level. Further:

"After those signals were given the truck kept coming on backwards and Mr. Kline stood perfectly still, and I stood still until the truck got very close and stepped aside and I saw it strike him."

He further testified that the rate of speed of the truck was not increased after the signals were given; that they were standing 4 or 5 rods distant when the

truck started back; that in his judgment it was traveling "about the pace that a man would walk quietly;" that Kline could have stepped out of the way had he seen fit to do so.

Kline was severely injured. There was some testimony that defendant had said if Kline "got in his way he would get hurt" and that "he was going back after another load and he  *  *  *  would either get gravel or Kline's ears."

On these facts, the defendant was informed against, tried and convicted of assault with intent to do great bodily harm less than murder. His counsel moved for a directed verdict of not guilty at the conclusion of the people's case and by request to charge when the proofs were closed.

We are of the opinion that there was no sufficient proof to justify the submission of the case to the jury. The offense charged is statutory. It involves an assault which is usually defined as an attempt or offer with force and violence to do a corporal hurt to another. It may, of course, be excusable or justifiable. Coupled with it, there must be an intent to do great bodily harm less than murder. The harm or injury intended must be serious and of an aggravated nature. *People* v. *Troy,* 96 Mich. 530, 537. In our opinion, there was nothing in the proofs on which the jury might find that an assault was committed, and certainly nothing from which it might even be inferred that the defendant intended to inflict serious bodily injuries on Mr. Kline. At the rate of speed the truck was traveling when within but a few feet of him, he could have avoided injury by stepping out of the way. It is apparent that he was angered and lost his head. He no doubt felt, and rightly so, that defendant should have obeyed his signals and kept the truck out of the pit. But defendant's failure to do so, while a breach of his duty to his superior, in no way justi-

217 Mich.—43.

fied Mr. Kline in standing in the pathway of the truck and permitting it to knock him down.   To convict the defendant, the jury must have found that he expected Kline to do just what he did do and that he intended to have the truck strike him and inflict serious injury on his person.   There was no testimony from which an inference could be drawn that defendant anticipated, or should have anticipated, that such a result would follow his disobedience of Kline's orders.   Proof from which such an intent may be inferred cannot be supplied by the mere fact that the injury was inflicted.

"When the intent is shown merely by the deed, it cannot very well be stretched beyond it." *People* v. *Ross*, 66 Mich. 94.

"The result of the blow or kick should not be used as evidence to show the intent with which such blow or kick was given, unless they (the jury) found, beyond a reasonable doubt, that such result was contemplated by Miller when he made the assault." *People* v. *Miller*, 91 Mich. 639, 642.

See, also, *People* v. *Sutherland*, 104 Mich. 468.

The conviction is reversed and set aside and the defendant discharged from his recognizance to appear for sentence.

FELLOWS, C. J., and WIEST and MOORE, JJ., concurred with SHARPE, J.   CLARK, BIRD, and STEERE, JJ., concurred in the result.

The late Justice STONE took no part in this decision.