# Order

Michigan Supreme Court
Lansing, Michigan

July 31, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

159617

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

                                     SC: 159617
                                     COA: 347331
                                     Van Buren CC: 2017-020932-FC

JOSE DANIEL ALONSO,
      Defendant-Appellant.

_____/

      By order of September 10, 2019, the prosecuting attorney was directed to answer the application for leave to appeal the March 26, 2019 order of the Court of Appeals. On order of the Court, the answer having been received, the application for leave to appeal is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted.

      MCCORMACK, C.J. (*concurring*).

      I concur in the order remanding this case to the Court of Appeals as on leave granted. I respectfully disagree with Justice MARKMAN that leave to appeal can be denied because the applicable immigration law was conclusively "neither succinct nor straightforward" in 2017. I agree with Justice MARKMAN that the legal question is whether it is "truly clear" that assault with intent to commit great bodily harm less than murder (AWIGBH) constitutes a "crime of violence" under 18 USC 16(a), and is therefore an "aggravated felony." 8 USC 1101(a)(43)(F). "Crime of violence" is defined in 18 USC 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," and 8 USC 1101(a)(43)(F) requires that the offense be one for which the term of imprisonment is "at least one year."

      As for the term of imprisonment, *Shaya v Holder*, 586 F3d 401, 403 (CA 6, 2009), provides:

> [F]or the purposes of Section 1101(a)(43)(F), indeterminate prison sentences in Michigan must be measured by the term actually served by the petitioner rather than by the maximum statutory sentence. . . . Thus, when using Michigan indeterminate sentences as the predicate for classifying someone as an "aggravated felon", the term must be measured by the sentence actually served or the minimum sentence given, whichever is greater . . . .

Here, the trial court imposed a minimum sentence of five years, which is clearly "at least one year." So 8 USC 1101(a)(43)(F) is satisfied.

As for 18 USC 16(a), the elements of AWIGBH, MCL 750.84(1)(a), are "(1) an assault, i.e., 'an attempt or offer with force and violence to do corporal hurt to another' coupled with (2) a specific intent to do great bodily harm less than murder." *People v Bailey*, 451 Mich 657, 668-669 (1996), quoting *People v Smith*, 217 Mich 669, 673 (1922). Thus, the remaining question is whether "an assault, i.e., 'an attempt or offer with force and violence to do corporal hurt to another,' " is clearly "the use, attempted use, or threatened use of physical force against the property or person of another." If so, defense counsel performed ineffectively by only informing the defendant that he "might" be subject to deportation; if not, he didn't. I think this issue merits further review, and I therefore support the Court's decision to remand this case to the Court of Appeals.[1]

CLEMENT, J. (*concurring*)

I concur in the Court's remand to the Court of Appeals. But I write separately to note that I do so because I believe the Court of Appeals should address these issues before this Court does. The Court of Appeals denied leave to appeal for lack of merit in the grounds presented, and this Court remands this case to the Court of Appeals as on leave granted because it is persuaded that the Court of Appeals should address defendant's arguments. This Court should generally refrain from addressing the merits of a case before the Court of Appeals has addressed them.

MARKMAN, J., (*dissenting*).

In *Padilla v Kentucky*, 559 US 356, 369 (2010), the United States Supreme Court recognized that "[i]mmigration law can be complex," "it is a legal specialty of its own," some criminal defense attorneys "may not be well versed in it," and "there will . . . be

---

[1] I agree with Justice MARKMAN that the law surrounding 18 USC 16(b) has been in significant flux in recent years. But because I view this case as a straightforward question of the interaction between MCL 750.84(1)(a) and 18 USC 16(a), I do not share his belief that that uncertainty is relevant to analyzing the legal issue presented here.

numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." As a result, when the law regarding deportation consequences "is not succinct and straightforward," a criminal defense attorney advising a defendant about the benefits and detractions of accepting a plea agreement "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. However, "when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear," and the attorney may be required to advise the defendant that a guilty plea will result in deportation. *Id*.

Defendant here pleaded guilty to assault with intent to commit great bodily harm less than murder (AWIGBH) after receiving advice from counsel that he "might" face immigration consequences, including deportation, as a result of his guilty plea. Defendant, relying exclusively on *Shaya v Holder*, 586 F3d 401 (CA 6, 2009), now argues that his deportation following an AWIGBH conviction was virtually certain such that his counsel rendered ineffective assistance by merely advising that he "might" face deportation. Defendant, however, overlooks discussion not only by the Sixth Circuit in *Shaya*, but also by the Sixth Circuit and the United States Supreme Court in post-*Shaya* decisions. In particular, defendant overlooks a decision by the Sixth Circuit that (a) substantially altered immigration law governing when a state conviction mandates deportation, and (b) controlled how an immigration judge must view defendant's AWIGBH conviction in the course of his deportation proceeding. Accordingly, I believe that defendant's argument regarding ineffective assistance of counsel is without merit, and I respectfully dissent from this Court's order remanding to our Court of Appeals for further consideration.

This case centers on whether at the time of his August 2017 plea it was "truly clear" that defendant was ineligible for "cancellation of removal" if he pleaded guilty to AWIGBH. An alien convicted of a felony may be deportable. 8 USC 1227(a)(2). And if the alien is deportable, an order of "removal" will issue, but based upon certain circumstances specific to the alien and his offense, the Attorney General possesses the discretion to "cancel" this order. 8 USC 1229b. Relevant to defendant, under 8 USC 1228(a)(3), an alien convicted of an "aggravated felony" is ineligible for cancellation of removal. In turn, 8 USC 1101(a)(43)(F) defines "aggravated felony" to be "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year[.]" Defendant's plea agreement called for a 5- to 15-year sentence; thus, if it was certain that AWIGBH constituted a "crime of violence," and hence an "aggravated felony," then it was certain that defendant was not eligible for cancellation of removal.

Section 16 of Title 18 states that a "crime of violence" is

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, *involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*. [18 USC 16 (emphasis added).]

At the time of defendant's plea, the constitutionality of subsection (b), particularly the emphasized language, was in considerable doubt. In 2015, the United States Supreme Court, in *Johnson v United States*, 576 US ___; 135 S Ct 2551 (2015), had held that the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another," in the related definition of "violent felony" in the Armed Career Criminal Act, see 18 USC 924(e)(2)(B)(ii), was unconstitutionally vague. Following *Johnson*, aliens seeking to avoid mandatory deportation under 8 USC 1229(a)(3) and 8 USC 1101(a)(43)(F) challenged the constitutionality of 18 USC 16(b). Federal circuit courts were split regarding the issue, with the Sixth Circuit ruling that § 16(b) was unconstitutional.[2] Compare *Shuti v Lynch*, 828 F3d 440 (CA 6, 2016); *United States v Vivas-Ceja*, 808 F3d 719 (CA 7, 2015); and *Dimaya v Lynch*, 803 F3d 1110 (CA 2, 2015) (holding § 16(b) unconstitutionally vague), with *United States v Gonzalez-Longoria*, 831 F3d 670 (CA 5, 2016), vacated 138 S Ct 2668 (2018) (upholding constitutionality of § 16(b)). Therefore, in August 2017, an offense against the law of Michigan only qualified as an "aggravated felony" if it satisfied the definition of "crime of violence" set forth by 18 USC 16(a).

As a result, for defendant to establish that it was "truly clear," "succinct," and "straightforward" that AWIGBH constituted an "aggravated felony," he needed to identify settled law holding that AWIGBH fell within the definition of "crime of violence" in § 16(a). *Shaya*, the case on which defendant relies in this regard, makes no mention of 18 USC 16(a). Indeed, given that the defendant in *Shaya* did not dispute that AWIGBH constituted a "crime of violence," *Shaya* merely assumed that AWIGBH constituted an "aggravated felony" without ever analyzing how the elements of AWIGBH compared to the definitions of "crime of violence" provided by either § 16(a) or § 16(b). See *Shaya*, 586 F3d at 405 n 1. And while Shaya's concession may have been reasonable in 2009, before the much broader § 16(b) definition faced constitutional scrutiny, it no longer remained an obvious or reasonable concession after *Johnson* and *Shuti*. Evidence of this, as highlighted by the attached appendix, is the fact that other offenses classified as "crimes of violence" and "aggravated felonies" before *Johnson*, and before the invalidation of § 16(b), have no longer qualified as such. Included among those offenses are the serious felonies of federal second-degree murder, federal

---

[2] In *Sessions v Dimaya*, 584 US ___; 138 S Ct 1204 (2018), the United States Supreme Court adopted the Sixth Circuit's views. In light of the fact that *Dimaya* was decided *after* defendant pleaded guilty, however, I rely upon *Shuti*, and not *Dimaya*, in analyzing defendant's argument.

kidnapping, and Florida aggravated battery with a firearm. Thus, when counsel in the instant case advised defendant as to the relative costs and benefits of pleading guilty to AWIGBH, it was an open question whether AWIGBH constituted a "crime of violence" and thus an "aggravated felony." This is in considerable contrast with *Padilla*, wherein counsel merely needed to read a single and unambiguous statutory provision to determine that the defendant in that case faced mandatory deportation. *Padilla*, 559 US at 368 ("Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses.").

Under *Padilla*, therefore, if it was possible that defendant was eligible for "cancellation of removal," or if the legal framework for determining his eligibility for such consideration was "not succinct and straightforward," counsel had no greater duty than to advise defendant that he *might* face immigration consequences as a result of his guilty plea. That is, when counsel advised defendant about the plea agreement, the law controlling the definitions of both "aggravated felony" and "crime of violence" was in significant flux. Furthermore, no statute or caselaw established that AWIGBH qualified as a "crime of violence" under § 16(a), the only provision in the definition of "crime of violence" that survived *Shuti*. As a result, unlike in *Padilla*, there was no single legal source to which counsel could have turned to quickly, or authoritatively, or certainly, determine that AWIGBH constituted an "aggravated felony" that would render him ineligible for "cancellation of removal."[3] Accordingly, because the law was unsettled in this manner and neither succinct nor straightforward, defense counsel satisfied his legal obligations under *Padilla* by advising defendant that an AWIGBH conviction "might" result in immigration consequences, including deportation. This conclusion is altogether consistent with decisions from other jurisdictions that have relied on *Johnson* and/or *Shuti* to reject claims of ineffective assistance of counsel because these cases sufficiently unsettled the law surrounding the definition of "crime of violence" and thus made it uncertain whether a given offense remained an "aggravated felony" that mandated deportation. See, e.g., *Tindi v State*, unpublished opinion of the Minnesota Court of

---

[3] Chief Justice MCCORMACK suggests that if an "assault" for purposes of AWIGBH satisfies § 16(a), then counsel performed deficiently by advising defendant that he "might" face deportation. However, this is but one of three necessary questions for consideration on remand, the others being: (a) whether the process required to determine whether an "assault" for purposes of AWIGBH satisfies § 16(a) constitutes an undertaking in which a criminal defense attorney in a state criminal proceeding is expected to engage pursuant to *Padilla*, and (b) whether, if counsel did perform deficiently, defendant has established prejudice as a result in that he would not have accepted the plea had he received different advice concerning the possible immigration implications of his plea.

Appeals, issued December 11, 2017 (Docket No. A17-0724), p 11 (citing *Johnson* and the Ninth Circuit's decision in *Dimaya* to conclude it was "not truly clear" that the defendant's fourth-degree criminal-sexual-conduct conviction was a "crime of violence" that would mandate deportation); *State v Taveras*, 2017-Ohio-1496, ¶ 29 (Ohio App, 2017) (rejecting the defendant's ineffective-assistance-of-counsel claim based on counsel's failure to advise the defendant that deportation was mandatory because it was "not 'truly clear'" that the defendant's offense was a "crime of violence" after *Shuti* invalidated § 16(b)). Therefore, I respectfully dissent from the Court's order remanding to the Court of Appeals for further consideration and instead would simply deny leave to appeal.

## APPENDIX

The cases below are illustrative of those involving offenses that do not, or may no longer, qualify as "crimes of violence" and "aggravated felonies" following the invalidation of 18 USC 16(b) by *Shuti*.

1. Third-degree burglary, in violation of Conn Gen Stat 53a-103. See *Genego v Barr*, 922 F3d 499, 501-502 (CA 2, 2019) (reversing a Board of Immigration Appeals decision holding that the offense was an "aggravated felony" because it was a "crime of violence" under § 16(b)).

2. Robbery, in violation of Cal Penal Code 211. See *United States v Garcia-Lopez*, 903 F3d 887, 892-893 (CA 9, 2018) (noting that "[w]ithout § 16(b), the Government's indictment and the April 15 removal order can only stand if California robbery constitutes a 'crime of violence' pursuant to § 16(a)" and concluding that "California robbery" is not categorically a "crime of violence" under § 16(a)).

3. Rape of a spouse, in violation of Cal Penal Code 262. See *United States v Canales-Bonilla*, 735 F Appx 154, 155 (CA 5, 2018) (accepting the government's concession "that *Dimaya* precludes the classification of Canales-Bonilla's prior conviction as an aggravated felony under § 16(b) as incorporated into § 1326(b)(2) through § 1101(a)(43)(F)" and concluding that the offense does not qualify as an "aggravated felony" under any other provision of the Immigration and Nationality Act, 8 USC 1101 *et seq.*).

4. Aggravated battery with a firearm, in violation of Fla Stat 784.045(1), 775.087(2). See *Lukaj v United States Attorney General*, 763 F Appx 826, 830 (CA 11, 2019) (recognizing that "[b]ecause the Supreme Court invalidated section 16(b), that provision cannot serve as the basis for classifying Lukaj's conviction as a crime of violence and as an aggravated felony that makes him ineligible for relief from removal" and remanding to the Board of Immigration Appeals to determine whether the offense

precluded cancellation of removal under any other provision of the Immigration and Nationality Act).

5. Aggravated child abuse, in violation of Fla Stat 827.03(2)(a). See *Villalobos v United States Attorney General*, 739 F Appx 947, 951-952 (CA 11, 2018) (holding that "[b]ecause *Dimaya* declared void for vagueness the statutory provision used to classify Villalobos's conviction as an aggravated felony, we grant the part of Villalobos's petition that challenges the denial of his application for cancellation of removal" and remanding for the Board of Immigration Appeals to determine whether the offense satisfied § 16(a)).

6. False imprisonment, in violation of Ga Code Ann 16-5-41. See *In re Luis Alexander Alvarez Sian*, unpublished decision of the Board of Immigration Appeals, decided July 13, 2018 (File No. AXX XX5 149) (ordering that where offense did not qualify as "crime of violence" under § 16(a), the proceeding to remove the defendant be terminated following the Supreme Court's invalidating § 16(b)).

7. Burglary of a habitation, in violation of Tex Penal Code Ann 30.01, 30.02. See *United States v Cruz*, 739 F Appx 261, 261 (CA 5, 2018) (recognizing the parties' concession that "in light of *Dimaya*'s invalidation of § 16(b), Cruz's prior Texas conviction for burglary of a habitation does not constitute an aggravated felony . . . .").

8. Second-degree murder, in violation of 18 USC 1111. See *United States v Begay*, 934 F3d 1033, 1041 (CA 9, 2019) (holding, within the context of a charge under 18 USC 924(c)(3), that the offense no longer qualifies as a "crime of violence" under analog to § 16(b) and does not qualify as a "crime of violence" under analog to § 16(a)).

9. Kidnapping, in violation of 18 USC 1201(a)(1). See *United States v Campbell*, 783 F Appx 311, 312 (CA 4, 2019) (recognizing that federal kidnapping is not a "crime of violence" for purposes of conviction under 18 USC 924(c)(3)); see also *United States v Walker*, 934 F3d 375, 378-379 (CA4, 2019) (same).

10. Conspiracy to commit Hobbs Act robbery, in violation of 18 USC 1951. See *United States v Biba*, 788 F Appx 70, 71-72 (CA 2, 2019) (recognizing that federal conspiracy to commit Hobbs Act robbery is not a "crime of violence" for purposes of conviction under 18 USC 924(c)(3)).

11. Conspiracy to commit assault with a dangerous weapon, in violation of 18 USC 1959(a)(6). See *Quinteros v United States Attorney General*, 945 F3d 772, 783 (CA 3, 2019) (recognizing that "[b]ecause the Supreme Court found that § 16(b) was

unconstitutionally vague, the [immigration judge's] aggravated felony finding based on § 16(b) cannot stand" and determining in the first instance that the offense does not qualify as a "crime of violence" under § 16(a)).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 31, 2020



Clerk

s0728