*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CALVIN RICARDO HARDEN,

Defendant-Appellant.

UNPUBLISHED
March 06, 2025
3:07 PM

No. 368194
Wayne Circuit Court
LC No. 21-002113-01-FC

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions of two counts of assault with intent to commit murder (AWIM), MCL 750.83, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 126 to 262 months' imprisonment for each AWIM conviction, and 2 years' imprisonment for each felony-firearm conviction. The felony-firearm sentences run consecutively to the AWIM sentences. We affirm.

## I. BACKGROUND

This case arises out of a shooting involving defendant and his son, codefendant, Cameron Shepherd,[1] as well as two victims, Ralphfeal Hoyle and Sylvester Steel, outside of Hoyle's house ("the house"). Defendant and Shepherd were Hoyle's neighbors and lived in a house across the street. Before the shooting, but on the same day, Steel had a verbal confrontation with defendant. Steel then entered Hoyle's house. That same morning, when Hoyle and Steel were leaving Hoyle's house, they were confronted by defendant and Shepherd. A heated argument ensued, primarily between Steel and Shepherd. At one point, defendant left but returned holding a rifle. Defendant and Shepherd were standing in the street, approximately 10 feet away from Steel and Hoyle, who were standing in the approach of Hoyle's driveway. Seconds later, defendant cocked the rifle, aimed it toward Steel and Hoyle, and opened fire. Hoyle fled on foot and called 911. Steel also

---

[1] Shepherd's case is not before us in this appeal.

-1-

fled and was later found bleeding from his stomach area and grabbing his waist one block away in an alleyway. Numerous police arrived at the scene and Steel was transported to a hospital. An investigation ensued, and defendant was arrested and charged. At the conclusion of a bench trial, defendant was convicted and sentenced as described above. This appeal followed.[2]

## II. ANALYSIS

## A. ENDORSED WITNESS AND INEFFECTIVE ASSISTANCE

Defendant contends the trial court failed to conduct a hearing to determine whether the prosecution exercised due diligence to produce Steel, an endorsed witness, denying him a fair trial and depriving him of due process. Alternatively, defendant argues he was deprived of the effective assistance of counsel by failing to request a hearing to determine due diligence. We disagree.

Typically, "[t]his Court reviews for an abuse of discretion the trial court's determinations regarding whether to issue a missing-witness instruction and whether the prosecution exercised due diligence." *People v Brown*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 359376); slip op at 11. "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). This Court "review[s] de novo questions whether a defendant was denied a fair trial or deprived of liberty without due process of law." *People v Steele*, 283 Mich App 472, 486; 769 NW2d 256 (2009). "We review de novo issues of statutory interpretation." *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016).

However, because the issue is unpreserved, "[w]e review unpreserved errors for plain error affecting substantial rights." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). To establish this, the following must be met:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error

---

[2] Defendant moved this Court to remand to the trial court, arguing: (I) defendant was denied a fair trial when the trial court did not hold a due diligence hearing regarding the prosecution's failure to produce Steel or, alternatively, defense counsel was ineffective by not requesting a due diligence hearing; and (II) defense counsel was ineffective by not requesting a mitigating circumstances instruction. This Court denied defendant's motion "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Harden*, unpublished order of the Court of Appeals, entered August 8, 2024 (Docket No. 368194). Our review of this matter has revealed no need for a remand to properly dispose of defendant's claims on appeal.

seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (alteration in original; quotation marks and citations omitted).]

MCL 767.40a states, in pertinent part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

A res gestae witness is one who "witness[ed] some event in the continuum of the criminal transaction" and whose testimony "aided in developing a full disclosure of the facts at trial." *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001). "If a prosecutor endorses a witness under MCL 767.47a(3), the prosecutor is obliged to exercise due diligence to produce that witness at trial." *Brown*, ___ Mich App at ___; slip op at 11 (quotation marks and citation omitted). Due diligence "is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id*. (quotation marks and citations omitted).

> If a prosecutor fails to exercise due diligence to produce the witness, the jury should be issued a missing-witness instruction:

> A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [*Id*. (quotation marks and citation omitted).]

M Crim JI 5.12 relates to the prosecutor's failure to produce a witness and states: "[*State name of witness*] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." See also *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003) (A missing witness instruction "may be appropriate if a prosecutor fails to secure the presence at trial of a listed witness who has not been properly excused.").

However, "an evidentiary hearing is no longer required simply because the prosecution did not produce a res gestae witness." *People v Cook*, 266 Mich App 290, 295-296; 702 NW2d 613 (2005). Under MCL 767.40a, "the prosecution has neither the obligation to produce at trial, nor the obligation to call as a witness at trial, a res gestae witness." *Id*. at 292 n 2. "[T]o warrant reversal for a violation of MCL 767.40a, defendant must show that he was prejudiced by noncompliance with the statute." *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017) (quotation marks and citation omitted).

> Moreover, as the appellant in this case, defendant bears the burden of providing this Court with a record to verify the factual basis of any argument upon which reversal [might be] predicated. Ultimately, [e]rror in the admission or exclusion of evidence does not warrant reversal if, in light of the other properly admitted evidence, it does not affirmatively appear more probable than not that a different outcome would have resulted without the error. [*Id*. at 523-524 (alterations in original; quotation marks and citations omitted).]

Defendant asserts the trial court erred by failing to conduct a hearing to determine whether the prosecution exercised due diligence to produce Steel. This argument lacks merit. In this case, defendant was not tried before a jury but, rather, before the court. See *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006) ("In a bench trial, the trial court is presumed to know the applicable law."). The record shows the prosecution did not produce three endorsed witnesses at trial. Two such witnesses, Shawntee Jeffries and Ryan Matthews, were waived by stipulation. The third endorsed witness, Steel, was not produced at trial. It is undisputed Steel was a res gestae witness and was not excused from testifying by the trial court. Recognizing Steel's absence, defense counsel noted in his opening statement that defendant was entitled to "a favorable instruction indicating that if Mr. Steel were to be here, that his information would be to the benefit of defense not to the prosecutor." Defense counsel stated the trial court was "aware of that instruction." Again, during his closing argument, defense counsel noted Steel was not produced and "if he was to testify I have to believe he would say something that's favorable to the defense." The prosecutor contended, under the jury instructions, the trial court may infer Steel's testimony would be unfavorable but was not mandated to do so. The trial court was aware defendant was entitled to the missing witness instruction because of Steel's absence and the fact he was not excused from the prosecution's witness list.

Even presuming there was a violation of MCL 767.40a for the failure to hold a due diligence hearing to determine the prosecution's efforts in producing Steel, defendant "must show that he was prejudiced by noncompliance with the statute" to warrant a reversal. *Everett*, 318 Mich App at 523 (quotation marks and citation omitted). Defendant cannot show any prejudice. On the contrary, as stated, defendant was the beneficiary of the missing witness instruction when the prosecution failed to produce Steel. Defendant's assertion that Steel's testimony would be favorable to his defense is mere speculation and unsupported by any evidence. See *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998) (stating that factual inferences must be supported "and cannot be arrived at by mere speculation"). Defendant has not shown that the failure to hold a due diligence hearing concerning the prosecution's efforts in producing Steel affected his bench trial verdict. See *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) ("A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial.") (quotation

marks and citation omitted). Further, contrary to defendant's assertion, the trial court did not base his convictions solely on the testimony of Hoyle, defendant, and Shepherd, but also on the video and audio exhibits, as well as the ballistics evidence. The record evidence supports the trial court's verdict. This evidence included (1) Hoyle's testimony he heard Steel shout he was "hit" and later saw Steel slumped over and bleeding from his stomach area, (2) Steel told Ciara Helms-Hill, a Detroit police officer, he was shot by a rifle, and (3) the video showing Steel slumped over and holding his side. Stated differently, "it does not affirmatively appear more probable than not that a different outcome would have resulted without the error." *Everett*, 318 Mich App at 523-524 (quotation marks and citations omitted). A remand to the trial court for a due diligence hearing would not affect the outcome in this case. Defendant was not denied a fair trial or deprived of due process under US Const, Ams V, VI, XIV, and Const 1963, art 1, §§ 17, 20.

Defendant also asserts defense counsel was ineffective by failing to request a due diligence hearing or dismissal of the case. We disagree.

Generally, "[a] defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Id*. at 671-672. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672. Although defendant moved for a remand and the issue was preserved, no evidentiary hearing was held under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973) ("*Ginther* hearing"), and "our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"The right to counsel guaranteed by the United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel." *Shaw*, 315 Mich App at 672. "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "First, the defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id*. at 290; see also *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290 (footnote and citation omitted). "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*.; see also *Strickland*, 466 US at 694-696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted). The second prong "does require a showing of prejudice[.]" *People v Randolph*, 502 Mich 1, 14; 917 NW2d 249 (2018).

Defendant's argument that any prejudice stemming from Steel's absence cannot be considered without a hearing to determine what his testimony would be, entitling him to a new trial, is misguided. As noted, this was a bench trial and the trial court was "presumed to know the applicable law." *Lanzo Constr Co*, 272 Mich App at 484. Further, even assuming defense counsel's performance fell below an objective standard of reasonableness when he did not request

a due diligence hearing, defendant has not shown he was prejudiced or a different result would have been reasonably probable. On the contrary, and despite defendant's contention this case was a credibility contest between Hoyle, defendant, and Shepherd, the trial court stated there was additional evidence, including videos, audio, and ballistics, to convict defendant. As stated, under MCL 767.40a, the prosecution's failure to produce Steel led to a favorable outcome for defendant—consideration of the missing witness instruction by the trial court. In fact, defense counsel specifically stated to the trial court that defendant was entitled to such an instruction. At no point did the prosecution argue Steel's testimony would not have assisted defendant. The outcome of the case was not undermined.

## B. HEARSAY STATEMENTS AND RIGHT TO CONFRONTATION

Defendant argues the trial court abused its discretion by admitting hearsay statements by Steel and the nurse who treated Steel at the hospital after the shooting. Defendant also contends the admission of such testimony violated his constitutional right to confrontation.

Regarding the hearsay claims, this Court "generally review[s] a trial court's evidentiary rulings for an abuse of discretion. A trial court abuses its discretion when its ruling falls outside the range of principled outcomes." *People v Bragg*, 296 Mich App 433, 445; 824 NW2d 170 (2012) (citation omitted). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).

> When we find error in the admission of evidence, a preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict. This inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence. In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error. [*Denson*, 500 Mich at 396-397 (quotation marks and citations omitted).]

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Shaw*, 315 Mich App at 672-673 (quotation marks and citation omitted); see also MRE 801(c). "Unless an exception exists, hearsay is inadmissible." *Shaw*, 315 Mich App at 673; see also MRE 802. "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." MRE 805. MRE 803(3) provides an exception to the rule against hearsay and states:

> **(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind or emotional, sensory, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity, or terms of declarant's will.

Statements of physical condition "offered to prove the truth of the statements, have generally been recognized as an exception to the hearsay rule because special reliability is provided by the spontaneous quality of the declarations when the declaration describes a condition presently existing at the time of the statement." *People v Moorer*, 262 Mich App 64, 68-69; 683 NW2d 736 (2004).

MRE 803(4) provides another exception to the rule against hearsay and states:

**(4) Statement Made for Purposes of Medical Treatment or Diagnosis in Connection with Treatment.** A statement that:

(A) is made for—and is reasonably necessary to—medical treatment or diagnosis in connection with treatment; and

(B) describes medical history, past or present symptoms or sensations, their inception, or their general cause.

Further:

Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care. This is true irrespective of whether the declarant sustained any immediately apparent physical injury. [*People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011) (citations omitted).]

The trial court concluded that Steel's statements that he was shot two to three times and had gunshot wounds were admissible under MRE 803(3) as the statements related to his then-existing physical condition, namely his bodily health. The trial court stated: "I think the testimony of from a prior witness stating that he was slumped over and the testimony that he was bandaged and the testimony . . . of him yelling that he was shot . . . allows the . . . bodily health hearsay exception to apply." The record shows Jerry Knight, a Detroit police detective, spoke to Steel at the hospital within days of the shooting. Detective Knight observed bandages on Steel's right and left shoulder, as well as his stomach or abdomen area and believed he was injured. Even assuming Steel's statements to Knight were hearsay and erroneously admitted, a different outcome would not have resulted without the error. There was ample other evidence, including the testimony of Hoyle and Officer Helms-Hill, as well as ballistics evidence, establishing Steel sustained gunshot wounds.

The nurse's statements that Steel was shot were inadmissible under MRE 803(4) because the nurse did not make the statements to seek medical treatment or diagnosis for treatment. Defendant argued in the trial court, and again on appeal, the nurse's statements constituted double hearsay because the nurse received the information regarding Steel from another person. The trial court was initially concerned these statements were double hearsay, but later stated it was "inclined to allow the statements from the medical professional" but only based "on her or his professional assessment and not based on . . . statements from Mr. Steel." The record shows Detective Knight spoke to the nurse, who told him Steel was shot. The record shows the statement was based on the nurse's observations. To be admissible under MRE 803(4), however, the statements had to be

made by Steel, or the individual seeking medical treatment or diagnosis in this case. Regardless of this error, a different outcome would not have resulted. As stated, there was ample other evidence, including the testimony of Hoyle and Officer Helms-Hill, as well as ballistics evidence, establishing Steel sustained gunshot wounds. Defendant cannot overcome the presumption the error was harmless.

Regarding the unpreserved constitutional issue, defendant further contends his rights under the Confrontation Clause were violated by the admission of Steel's and the nurse's hearsay statements. We disagree.

Typically, "[t]his Court reviews de novo a question of constitutional law." *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). "We also review de novo questions whether a defendant was denied a fair trial or deprived of liberty without due process of law." *Steele*, 283 Mich App at 486.

> However, we review unpreserved constitutional issues for plain error affecting substantial rights. To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights. An error affects substantial rights when it impacts the outcome of the lower-court proceedings. Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence. [*People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation mark and citations omitted).]

A criminal defendant has the right to confront the witnesses against him under the United States and the Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20.

> Testimonial statements of witnesses absent from trial are therefore admissible only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant. Ordinarily, whether a statement is testimonial in nature depends on whether it constitutes a declaration or affirmation made for the purpose of establishing or proving some fact. More particularly, we have explained that [s]tatements are testimonial where the primary purpose of the statements or the questioning that elicits them is to establish or prove past events potentially relevant to later criminal prosecution. [*People v Dinardo*, 290 Mich App 280, 288; 801 NW2d 73 (2010) (quotation marks and citations omitted; alterations in original).]

Defendant broadly asserts (1) neither Steel nor his nurse were shown to be unavailable, (2) both Steel's and the nurse's statements are testimonial, and (3) there was no prior opportunity to cross-examine either Steel or the nurse. Defendant provides a cursory overview to these arguments on appeal. However, an "appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (alterations in original; quotation marks and citations omitted).

Even assuming (1) Steel's and the nurse's statements were testimonial, (2) neither witness was unavailable, and (3) defendant did not have a chance to cross-examine either witness, any error did not affect defendant's substantial rights. Any error does not impact the outcome of the case because, as stated, there was ample other evidence establishing Steel sustained gunshot wounds. The record evidence supports the trial court's verdict. This evidence included (1) Hoyle's testimony he heard Steel shout he was "hit" and later saw Steel slumped over and bleeding from his stomach area, (2) Officer Helms-Hill's testimony Steel told her he was shot by a rifle, and (3) video showing Steel slumped over and holding his side.

## C. INEFFECTIVE ASSISTANCE AND MITIGATING CIRCUMSTANCES

Defendant contends defense counsel was ineffective by failing to request an instruction on mitigating circumstances based on adequate provocation under M Crim JI 17.4. We disagree.

As stated, generally, "[a] defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *Shaw*, 315 Mich App at 671 (quotation marks and citation omitted). "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Id*. at 671-672. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672. Although defendant moved for a remand and the issue was preserved, no *Ginther* hearing was held, and "our review is limited to mistakes apparent on the record." *Payne*, 285 Mich App at 188.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses. Failing to request a particular jury instruction can be a matter of trial strategy." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017) (quotation marks and citations omitted). "AWIGBH is a lesser included lesser offense of AWIM. These offenses are distinguishable from each other by the intent required of the actor at the time of the assault. That is, AWIM requires an actual intent to kill that is not a part of AWIGBH." *Everett*, 318 Mich App at 529 (quotation marks and citations omitted).

> It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law. Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense. [A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it. Failure to instruct on a lesser included offense undermines reliability in the verdict only when the evidence clearly supports the lesser included instruction, but the instruction is not given. In analyzing whether the evidence clearly supports the instruction, we must consider the entire cause, including evidence that has been offered to support the greater offense. [*Id*. (alterations in original; quotation marks and citations omitted).]

M Crim JI 17.4 states:

(1) The defendant can only be guilty of the crime of assault with intent to commit murder if [he / she] would have been guilty of murder had the person [he / she] assaulted actually died. If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.

(2) Voluntary manslaughter is different from murder in that for manslaughter, the following things must be true:

(3) First, when the defendant acted, [his / her] thinking must have been disturbed by emotional excitement to the point that an ordinary person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been caused by something that would cause an ordinary person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide. [If the defendant is mentally or emotionally impaired in some way, you may consider that.]

(4) Second, the killing itself must have resulted from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and before reason took over again. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

(5) If you find that the crime would have been manslaughter had the person died, then you must find the defendant not guilty of assault with intent to murder [and decide whether (he / she) is guilty of any lesser offense].

Defendant's argument defense counsel failed to request a mitigating circumstances instruction when defendant testified he feared for his life when Steel reached toward a gun in his waistband and broke free from Hoyle's restraint, is without merit. As noted, this was a bench trial and the trial court was "presumed to know the applicable law." *Lanzo Constr Co*, 272 Mich App at 484. The trial court was presumed to know AWIGBH was a necessarily included lesser offense of AWIM, as well as the law pertinent to whether defendant was acting under emotional excitement at the time he opened fire. The record also shows the trial court was aware defendant's theory of the case was that he acted in self-defense.

Moreover, defendant's argument that defendant was provoked by Steel's actions, which provided a basis to mitigate the AWIM down to AWIGBH is without merit. Defendant misreads this Court's opinion in *People v Mitchell*, 149 Mich App 36; 385 NW2d 717 (1986). Neither *Mitchell* nor M Crim JI 17.4 stands for that proposition.[3] Rather, *Mitchell*, 149 Mich App at 39, concludes that if there exists a reasonable provocation that would mitigate murder down to manslaughter, then a defendant cannot be guilty of AWIM because he lacks the intent to murder.

---

[3] The jury instruction merely instructs on when a murder is mitigated down to manslaughter. It does not address the concept of mitigating AWIM down to AWIGBH.

-10-

But in addressing whether the defendant could be guilty of AWIGBH, the Court, *id.* at 38-39, states:

> The elements of assault with intent to do great bodily harm less than murder include (1) an attempt or offer with force or violence, to do corporal hurt to another, (2) coupled with an intent to do great bodily harm less than murder. MCL 750.84; MSA 28.279, *People v Smith*, 217 Mich 669, 673; 187 NW 304 (1922); *People v Leach*, 114 Mich App 732, 735 319 NW2d 652 (1982). The only requirement in regard to intent is that a defendant have the intent to do great bodily harm. If a defendant has such intent, the fact that he was provoked or that he acted in the heat of passion is irrelevant to a conviction. An assault is not mitigated to a lesser offense because of the existence of provocation.

Thus, there are two possibilities in this case: (1) that the trial court concludes that there was no provocation that would have reduced the murder (had the victim died) to manslaughter or (2) that the trial court concludes that there was such a provocation. In the first case, defendant would be guilty of AWIM. In the second case, defendant would be acquitted of AWIM, and although he could have been convicted of AWIGBH had the trial court been asked to consider the lesser charge, such a conviction would have been based on whether he had the requisite intent for that particular crime, not whether "he was provoked . . . or acted in the heat of passion." *Id*. Clearly, the trial court's decision falls into the first possibility. That is, had the trial court found that defendant was reasonably provoked such that, had the victim died, then defendant would only be guilty of manslaughter rather than murder it would have resulted in the trial court acquitting defendant. But defendant's conviction for AWIM reflects a rejection of such an argument, and there is nothing to indicate that a request for a mitigating circumstances instruction would have had any bearing on that determination.

The trial court found defendant's intent was supported by evidence on the record, including the video and audio exhibits, as well as ballistics evidence. The trial court stated the exhibits and other trial testimony did "not agree with [defendant's] recitation of the events." The trial court noted defendant returned to the scene after obtaining a rifle and opened fire at a time when the argument was "defusing and declining." Based on Hoyle's testimony, the trial court found defendant pointed a rifle at Steel and Hoyle, opened fire, and "hit" Steel. Defense counsel, by defendant's own admission on appeal, attacked the intent element of the AWIM charges. The decision not to request a mitigating circumstances instruction under M Crim JI 7.14 was not objectionably unreasonable and a different result was not reasonably probable. Defense counsel was also not ineffective "for failing to make a meritless or futile objection." See *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

## III. CONCLUSION

The trial court did not commit plain error by failing to conduct a due diligence hearing regarding the prosecution's efforts to produce Steel as a witness at trial. Any error by defense counsel by not objecting to the absence of Steel was effectively harmless given its occurrence in a bench trial and the presumption a trial court knows the applicable law regarding a missing witness instruction, which the record bore out in this case. Defendant is not entitled to a new trial or a due diligence hearing. Any error by the trial court in admitting Steel's statements under MRE 803(3)

or the nurse's statements under MRE 803(4) was harmless. There was no plain error affecting defendant's substantial rights to confront the witnesses against him. Defendant is not entitled to a new trial. Defense counsel was not ineffective for failing to request an instruction on mitigating circumstances based on adequate provocation under M Crim JI 17.4. Defendant is not entitled to a new trial or evidentiary hearing.

 Affirmed.


        /s/ Philip P. Mariani
        /s/ Michael J. Riordan
        /s/ Kathleen A. Feeney