*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TOFEEK SAEED,

        Defendant-Appellant.

UNPUBLISHED
April 14, 2025
1:35 PM

No. 368514
Wayne Circuit Court
LC No. 21-006528-01-FC

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions for one count of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, one count of discharge of a firearm at or in a dwelling or occupied structure causing injury, MCL 750.234b(3), and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 23 months to 10 years' imprisonment for the AWIGBH conviction, 49 months to 15 years' imprisonment for the discharge of a firearm at a dwelling or occupied structure causing injury conviction, and two years' imprisonment for each of the felony-firearm convictions. The trial court also ordered defendant to pay a crime victim assessment fee of $130, $1,300 in court costs, and $272 in state minimum costs. We affirm.

This case arises out of the nonfatal shooting of Randall Perry, Jr., on July 31, 2021, at a gas station in Detroit. On the date of the shooting, Perry Jr. went to the gas station with his dad Randall Perry, Sr., Ormonde Ali, and a friend of Perry Sr.'s named Ray.

Perry Jr. and his three companions loitered in the gas station for approximately 10 minutes before getting into an argument with defendant, who was working at the gas station behind a glass partition in an employee area. The argument escalated, and defendant eventually came out from behind the partition with an assault rifle, which he pointed at Perry Jr. and his companions. This

---

[1] Defendant was also charged with one count of assault with intent to commit murder, MCL 750.83, and an associated felony-firearm count, and found not guilty of both.

-1-

escalated the argument further, causing one of defendant's coworkers to push him back into the employee area in an attempt to deescalate the situation. With defendant back behind the glass partition, Ali raised his fists toward his face indicating an intent to fight, and defendant again left the employee area, and he and Ali began to scuffle. The men eventually separated, and Ali and Perry Jr. left the store. As they were departing, defendant retrieved the assault rifle and shot it out of the gas station at the two men, hitting Perry Jr. in the back of the leg.

Following a bench trial, the trial court found defendant guilty of AWIGBH, discharge of a firearm at or in a dwelling or occupied structure causing injury, and two attendant counts of felony-firearm. It also ordered defendant to pay costs and fees. Defendant now appeals.

Defendant argues that his convictions were improper because the trial court misapplied the applicable self-defense law and made an improper mandatory inference when convicting him of AWIGBH. We disagree.

"A claim of insufficient evidence is reviewed de novo." *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). When considering a sufficiency-of-the-evidence claim, this Court views the evidence in the light most favorable to the prosecution to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Due to the difficulty of proving a defendant's knowledge or intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). This Court reviews questions of law de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).[2]

Though typically applied in the context of murder or manslaughter, self-defense can apply to other crimes. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). "Once a defendant injects the issue of self-defense into the trial and satisfies the initial burden of producing some supporting evidence, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 9.

Defendant argues that the trial court misapplied the applicable self-defense laws by faulting defendant for coming out from behind a glass partition when he had no duty to retreat, and for failing to address the rebuttable presumption that defendant reasonably feared for his life during the altercation.

At common law, self-defense "justifies otherwise punishable criminal conduct . . . if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat

---

[2] Defendant cites to the standards for reviewing a trial court's factual findings following a bench trial, but he does not challenge any finding made by the trial court. Rather, defendant's argument focuses on (1) the trial court's alleged misapplication of the law to the facts as found by the trial court and (2) whether the court's factual findings supported defendant's convictions.

of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *Dupree*, 486 Mich at 707 (quotation marks and citation omitted). Generally, the individual claiming self-defense cannot be the aggressor in the encounter. *Id*. See also *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). Self-defense is codified by MCL 780.972, which provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

With regard to establishing an honest and reasonable belief of imminent death or great bodily harm, MCL 780.951(1) outlines circumstances where a rebuttable presumption applies "that an individual who uses deadly force or force other than deadly force . . . has an honest and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur[.]" The presumption applies when "[t]he individual against whom deadly force or force other than deadly force is used . . . is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will," MCL 780.951(1)(a), and the individual using force "honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a)," MCL 780.951(1)(b).

Beginning with the rebuttable presumption, the evidence does not demonstrate that Ali or his companions were attempting to remove defendant from the business premises. A review of video footage played at trial shows that defendant was securely behind the glass partition when Ali, from the customer area, raised his fists up towards his face. Defendant then came out into the customer area and knocked his fists together, and the men began to scuffle. While Ali pursued defendant partway into the employee area by grabbing him by the shirt, the men were separated shortly after, and Ali quickly left the store. Viewed in the light most favorable to the prosecution, Ali's pursuit of defendant was not to remove him from the premises but rather was part of the scuffle. The evidence does not support that Ali or any of his companions were trying to remove defendant, so the rebuttable presumption under MCL 780.951(1) does not apply.[3]

Accordingly, for defendant to claim self-defense, he must have had an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death or great bodily harm to himself. MCL 780.972(1)(a). The evidence shows that after defendant and Ali got into a physical altercation, Ali and Perry Jr. left the store. Defendant then obtained the assault rifle from the secured employee area and aimed it through an open door in the direction that the men departed. Perry Jr. testified that he was walking away from defendant with his back turned when

---

[3] We further note that defendant never argued at his trial that the rebuttable presumption under MCL 780.951(1) applied.

he was shot, and that the bullet hit him in the back of his leg. Perry Sr. testified that defendant was the only armed individual during this interaction, and Perry Jr. similarly testified that he and his companions were not armed. Viewing this evidence in the light most favorable to the prosecution, it demonstrates that defendant did not have a reasonable belief that he was in imminent risk of death or bodily harm when he shot Perry Jr. from a place of safety, after Perry Jr. and Ali departed the gas station unarmed. Even if defendant was in fear of Ali and Perry Jr. due to his recent scuffle with Ali, any purported threat was no longer imminent because both men departed the gas station and had their backs turned when defendant shot the rifle. Further, defendant was securely in the employee area when Ali and Perry Jr. left the store, and he opened the door to the customer area to aim and shoot the assault rifle.

Defendant contends that the trial court improperly weighed against him his decision to enter the customer area because he had no duty to retreat. This argument is meritless. The trial court reasoned that defendant could not have reasonably believed that the use of deadly force was necessary to prevent death or harm to himself or another because defendant repeatedly exited a place of relative safety to confront Ali and Perry Jr. Actively pursuing a dangerous situation is clearly distinct from standing one's ground. That aside, the evidence is clear that, before defendant shot Perry Jr., defendant exited the employee area to voluntarily engage in mutual combat with Ali—Ali raised his fists to his face in an apparent invitation to fight, in response to which defendant left the employee area and knocked his fists together, demonstrating his acceptance of Ali's invitation. The two proceeded to fight, and after defendant was bested, he fled back to the safety of the employee area. Then, while Ali and Perry Jr. walked away, defendant grabbed an assault rifle and shot Perry Jr.—who was not involved in the fight—while his back was turned and he was outside of the gas station. It is questionable whether defendant had no duty to retreat under these circumstances. See *People v Riddle*, 467 Mich 116, 120; 649 NW2d 30 (2002) ("One who is involved in a physical altercation in which he is a willing participant . . . is *required* to take advantage of any reasonable and safe avenue of retreat before using deadly force against his adversary, should the altercation escalate into a deadly encounter."). But that is ultimately beside the point because defendant's argument conflates the fact that defendant had no duty to retreat with the trial court's consideration of defendant's choice to leave a position of relative safety to actively pursue Ali and Perry Jr.[4] Defendant's argument that the trial court erred by considering the fact that defendant left the employee area is accordingly without merit.

Defendant also argues that the trial court drew an impermissible mandatory inference regarding the specific intent required to establish his AWIGBH conviction by concluding that defendant had the intent to cause great bodily harm when he used an assault rifle.

"The elements of AWIGBH are (1) an assault, i.e. an attempt to offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." *People v McKewen*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 158869); slip op at 5 (quotation marks and citation omitted). "The intent to do great bodily harm

---

[4] Defendant also emphasizes that he had a legal right to be in the gas station, but that is also beside the point. To raise a claim of self-defense, defendant had to have a legal right to be in the area, but that fact did not automatically justify defendant's use of deadly force, as defendant contends.

-4-

less than murder is an intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citations omitted). "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. at 629. "[I]njuries suffered by the victim may also be indicative of a defendant's intent." *Id*.

Defendant contends that the trial court applied an improper mandatory inference when, in determining whether defendant had the intent to cause great bodily harm, the court reasoned, "You have to have that intent to cause the great bodily harm if you're using that type of weapon. It's an assault weapon that could kill." As defendant readily concedes, use of a dangerous weapon can lead to a permissive inference regarding intent, and it is patently obvious that, in the quoted statement, the trial court was speaking colloquially to apply this permissive inference. Nothing in the court's opinion suggests that the court felt constrained to apply this inference or that it actually believed that it was required to infer that defendant intended to cause great bodily harm simply because he used an assault rifle, as defendant contends.

Regardless, if we were to conclude that the trial court improperly drew a mandatory inference regarding intent, we would conclude that the error was harmless. See MCR 2.613(A). Again, defendant readily concedes that use of a dangerous weapon can lead to a permissive inference regarding intent, and the trial court cited other evidence in support of its intent determination. The court noted that defendant shot Perry Jr. while his back was turned and "aimed low" when shooting. It also noted the severity of Perry Jr.'s injuries, and the fact that he suffered great bodily harm. The trial court's recitation of other supporting evidence to establish defendant's intent undercuts defendant's argument that the court drew a mandatory conclusion based solely on defendant's use of a deadly weapon, and, as discussed, there is otherwise sufficient evidence to support the trial court's finding that defendant intended to cause great bodily harm.

Defendant next argues that his costs and fees should be vacated because they violate the Excessive Fines Clauses of the Michigan and United States Constitutions. We disagree.

To preserve an issue related to the imposition of costs and fees on appeal, a defendant must object upon a trial court's order to pay. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). Here, defendant did not raise the issue of whether his fees and costs violated the Excessive Fines Clauses of the Michigan and United States Constitutions at sentencing. Accordingly, the issue is unpreserved. "An unpreserved claim of constitutional error is reviewed only for plain error affecting the defendant's substantial rights." *People v Thigpen*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360351); slip op at 5. To prevail under the plain error rule, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected [defendant's] substantial rights." *Id*. at ___; slip op at 3 (quotation marks and citation omitted; alteration in original).

Defendant challenges the constitutionality of the trial court's imposition of state minimum costs under MCL 769.1k(1)(a), court costs under MCL 769.1k(b)(*iii*), and the imposition of a crime victims fund assessment under MCL 780.905. "A statute challenged on constitutional grounds is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021) (quotation marks and citation omitted). "A constitutional challenge to the validity of

-5-

a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *Id*. (quotation marks and citation omitted). "A facial challenge attacks the statute itself and requires the challenger to establish that no set of circumstances exists under which the [a]ct would be valid." *Id*. (quotation marks and citations omitted; alteration in original). In contrast, "[a]n as-applied challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution of government action." *Id*. (quotation marks and citations omitted). While the prosecution contends that defendant's challenge is a facial one, defendant's argument frames the issue around the trial court's failure to make an individualized assessment regarding his financial circumstances. Accordingly, defendant is not facially challenging the constitutionality of the applicable statutes but the trial court's process in imposing costs and fees.

The Eighth Amendment of the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII. The Michigan Constitution similarly provides that "excessive fines shall not be imposed." Const 1963, art 1, § 16. The Excessive Fines Clause has been incorporated to apply to states. *Timbs v Indiana*, 586 US 146, 151; 139 S Ct 682; 203 L Ed 2d 11 (2019).

Assuming for purpose of this opinion that the imposed costs and fees constitute fines, we conclude that defendant's argument fails because the purported fines do not violate the Excessive Fines Clauses of the Michigan and United States Constitutions. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality," meaning that the fine must "bear some relationship to the gravity of the offense that it is designed to punish." *United States v Bajakajian*, 524 US 321, 334; 118 S Ct 2028; 141 L Ed 2d 314 (1998). The United States Supreme Court has articulated a test where courts compare the amount of the forfeiture to the gravity of the defendant's offense—"[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id*. at 336-337.

Defendant argues that while his act of firing a weapon in public and injuring a person is "dangerous and serious," the gravity of his offense is mitigated by several factors, including Ali and his companions' provocation of defendant, and the likelihood that defendant had an honest belief that he was in danger. As discussed above, the evidence does not demonstrate that defendant honestly or reasonably believed that he was in danger of imminent death or bodily harm, and he also provoked Ali before the men mutually began to fight one another. Further, Perry Jr. suffered serious injuries as a result of the shooting—he initially remained in the hospital for three weeks, then had to return for another two weeks due to complications. He also underwent five surgeries.

We further note that MCL 750.84(1) authorizes punishment of a fine "not more than $5,000.00" for an AWIGBH conviction, while MCL 750.234b(3) authorizes a fine "not more than $15,000.00" for a discharge of a firearm at or in a dwelling or occupied structure causing injury conviction. Given these considerations and the seriousness of defendant's conduct, we conclude that defendant's total court-ordered payment of $1,702 is not grossly disproportional to the gravity of his offense under the Excessive Fines Clause.

Defendant also argues that the trial court was required to assess his ability to pay his court-ordered costs and fees under the Excessive Fines Clause of the Michigan Constitution. The Michigan Supreme Court observed in *People v Wolfe*, 338 Mich 525, 540; 61 NW2d 767 (1953), that determining whether a fine was excessive in violation of the Michigan Constitution

"necessarily involves a consideration of the purpose sought to be accomplished by the legislature and of the seriousness of the problem with which it undertook to deal."[5] In *People v Antolovich*, 207 Mich App 714; 525 NW2d 513 (1994), superseded by statute on other grounds, this Court noted the following considerations when evaluating whether a fine is excessive under the Michigan Constitution:

> In determining whether a fine authorized by statute is excessive in the constitutional sense, due regard must be had to the object designed to be accomplished, to the importance and magnitude of the public interest sought to be protected, to the circumstances and nature of the act for which it is imposed, to the preventive effect upon the commission of the particular kind of crime, *and in some instances to the ability of accused to pay, although the mere fact that in a particular case [the] accused is unable to pay the fine required to be assessed does not render the statute unconstitutional*. [*Antolovich*, 207 Mich App at 717 (citation omitted; emphasis added).]

Based on this language, a defendant's ability to pay a fine can be considered for the purposes of an excessive-fines analysis "in some instances." *Id.* But for the same reasons detailed above, we conclude that the costs and fees imposed are not excessive under the Michigan Constitution. See e.g., *People v Miller*, 206 Mich App 638, 641; 522 NW2d 697 (1994) (concluding a $3,500 fine did not violate "all standards of reasonableness in view of defendant's criminal history and the legislative purpose of the fine.").

Defendant additionally requests that this Court order a hearing on his ability to pay as an alternative to vacating his costs and fees. This appeal is not the proper vehicle for this request. If defendant wishes for a court to address his ability to pay his court-imposed costs and fees, the appropriate time to do so is when the payment is enforced. See *Jackson*, 483 Mich at 292 (concluding "trial courts should not entertain defendants' ability-to-pay-based challenges to the imposition of fees until enforcement of that imposition has begun.").[6] A review of the register of actions indicates that the trial court has not entered an order to enforce defendant's payment, so this issue is not ripe for review.

Turning to defendant's final argument, defendant contends that his costs and fees should be vacated because they do not fund libraries in violation of Const 1963, art 8, § 9. We disagree.

This issue, like the last one, is unpreserved because defendant did not object to the imposition of his costs in the trial court. *Konopka*, 309 Mich App at 356. Our review is

---

[5] Although the court was applying Const 1908, art 2, § 15 (providing that "excessive fines shall not be imposed"), the current Excessive Fines Clause reads the same.

[6] We note that while *Jackson* addressed an ability-to-pay-based challenge in the context of attorney fees, the Court's discussion also addresses costs imposed by the trial court. *Jackson*, 483 Mich at 291-294.

accordingly limited to "plain error affecting the defendant's substantial rights." *Thigpen*, ___ Mich App at ___; slip op at 5.

Defendant again challenges his court-ordered court costs under MCL 769.1k(1), state minimum costs under MCL 769.1j(1)(a), and crime victims fund assessment under MCL 780.905. He argues that the "statutory schemes behind the court costs, state minimum costs, and the crime victim's right's assessment run afoul of Const 1963, art 8, § 9." Because defendant facially challenges the applicable statutes, he must "establish that no set of circumstances exists under which the [a]ct would be valid." *Johnson*, 336 Mich App at 692 (quotation marks and citations omitted; alteration in original).

Const 1963, art 8, § 9 provides, "All fines assessed and collected in the several counties, townships and cities for any breach of the penal laws shall be exclusively applied to the support of such public libraries, and county law libraries as provided by law."

Defendant relies on his excessive-fines analysis to reassert that his court-imposed costs and fees are fines under Const 1963, art 8, § 9, because they are "at least partially punitive." Even if we accepted defendant's analysis of what constitutes a fine in the context of the Excessive Fines Clause, defendant makes no further attempt to explain whether the same definition is applicable in the separate context of Const 1963, art 8, § 9.

This Court has held that a fee which "appear[ed] to be compensatory and not penal" did not constitute a fine within the context of Const 1963, art 8, § 9. *Saginaw Pub Libraries v Judges of 70th Dist Court*, 118 Mich App 379, 389; 325 NW2d 777 (1982). Outside of the context of the Excessive Fines Clauses, the Michigan Supreme Court has stated that "[t]he Legislature is aware that a fine is generally a criminal punishment," such that the Legislature's decision to use terms other than "fine" in a statute constitute evidence of the Legislature's intent for the statute to be nonpunitive. *People v Earl*, 495 Mich 33, 40; 845 NW2d 721 (2014). Under this reasoning, criminal fines have been distinguished from the nonpunitive crime victims rights assessments, *id*., and court costs under MCL 769.1k(1)(b)(*iii*), *Konopka*, 309 Mich App at 372-373. We also note that MCL 769.1k(1)(a) does not label the imposition of state minimum costs as a "fine."

Taken together, these principles suggest that defendant's court-ordered costs under MCL 769.1k(1)(a) and (b)(*iii*), and his assessment under MCL 780.905, are compensatory and nonpenal, and do not constitute fines for the purposes of Const 1963, art 8, § 9. Because defendant did not "establish that no set of circumstances exists under which the [a]ct would be valid," *Johnson*, 336 Mich App at 692 (quotation marks omitted; alteration in original), the statutory schemes underlying his costs and fees are not facially unconstitutional under Const 1963, art 8, § 9. Accordingly, defendant cannot demonstrate plain error affecting his substantial rights.

Affirmed.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney